1   Luanne Sacks (SBN 120811)
    lsacks@srclaw.com
2   Michele Floyd (SBN 163031)
    mfloyd@srclaw.com
3   Robert B. Bader (SBN 233165)
    rbader@srclaw.com
4   Jacqueline Young (SBN 280374)
    jyoung@srclaw.com
5   SACKS, RICKETTS & CASE LLP
    177 Post Street, Suite 650
6   San Francisco, CA 94108
    Telephone: 415-549-0580
7   Facsimile: 415-549-0640

8   Attorneys for Defendants
    ASUS COMPUTER INTERNATIONAL and
9   ASUSTEK COMPUTER, INC.

10              **UNITED STATES DISTRICT COURT**

11             **NORTHERN DISTRICT OF CALIFORNIA**

12

13   EDWARD BREKHUS, an individual, on         CASE NO.
     behalf of himself, the general public, and those
14   similarly situated,                        [San Francisco County Superior Court Case No.
                                                 CGC-18-571553]
15                      Plaintiff,
                                                 **DEFENDANTS ASUS COMPUTER**
16   v.                                          **INTERNATIONAL AND ASUSTEK**
                                                 **COMPUTER INC.'S NOTICE OF**
17   ASUS COMPUTER INTERNATIONAL;               **REMOVAL OF CIVIL ACTION UNDER**
     ASUSTEK COMPUTER INC.,                      **28 U.S.C. SECTION 1332(D) (CLASS**
18                                               **ACTION FAIRNESS ACT)**
                        Defendants.
19

20                    <u>**NOTICE OF REMOVAL**</u>

21          TO THE CLERK OF THE ABOVE-ENTITLED COURT, THE PARTIES, AND ALL

22   ATTORNEYS OF RECORD:

23          PLEASE TAKE NOTICE that pursuant to 28 U.S.C. §§ 1332(d), 1367, 1441(a), 1446,

24   and 1453, Defendants ASUS Computer International ("ACI") and ASUSTeK Computer Inc.

25   ("ASUSTeK") (collectively, "ASUS") hereby remove to this Court the state court action

26   described below, pending as case number CGC-18-571553 in the Superior Court of California,

27   San Francisco County ("State Court Action").  The following statement is submitted pursuant to

28   28 U.S.C. § 1446(a):

                                   -1-

1    **I.      FACTUAL BACKGROUND**

2        1.      On or about November 26, 2018, Plaintiff Edward Brekhus ("Plaintiff") filed a

3    class action complaint ("Complaint") and thereby commenced the State Court Action against ACI

4    in the Superior Court of the State of California for San Francisco County, entitled *Edward*

5    *Brekhus v. ASUS Computer International, et al.*  ACI was served with the Complaint on

6    November 28, 2018.

7        2.      In the Complaint, Plaintiff purported to represent a class of only California

8    residents who "purchased a Purported USB 3.0 Laptop between November 21, 2014 and the

9    present."  **Exhibit A** (Complaint), ¶ 40.

10       3.      On or about April 26, 2019, Plaintiff filed a first amended class action complaint

11   ("FAC") in the State Court Action against ACI and ASUSTeK.  **Exhibit B** (FAC).  Plaintiff

12   served the FAC on April 26, 2019.  As required by 28 U.S.C. § 1446(a), a copy of the docket and

13   all process, pleadings, and orders served upon ACI with respect to the State Court Action are

14   attached hereto as **Exhibits A**, **B** and **C**.

15       4.      The allegations of the FAC, attached hereto as **Exhibit B**, are incorporated by

16   reference as though set forth fully herein without admitting to any of them.[1]

17       5.      Plaintiff alleges that he purchased an ASUS laptop computer that misrepresented

18   that the laptop's USB 3.0 port is capable of transferring data at a "SuperSpeed" rate of 5Gbit/s,

19   and that the USB 3.0 port is ten (10) times faster than USB 2.0 ports.  **Exhibit B** (FAC), ¶¶ 1-3,

20   60.

21       6.      Based on these basic facts, the FAC alleges seven causes of action: (1) fraud,

22   deceit and/or misrepresentation; (2) Violation of the Consumer Legal Remedies Act (California

23   Civil Code §§ 1750, *et seq.*); (3) False Advertising (California Business and Professions Code §§

24   17500, *et seq.*); (4) negligent misrepresentation; (5) Unfair, Unlawful and Deceptive Trade

25   Practices (Business and Professions Code §§ 17200, *et seq.*); (6) breach of express warranty; and

26

27   ─────────────────────

     [1] This Notice of Removal is based on the allegations of the FAC, as is required for purposes of
28   analyzing removability.  ASUS believes that the allegations are without merit, and will dispute
     them at an appropriate time.

(7) Violation of the Song-Beverly Consumer Warranty Act (Civil Code §§ 1790, *et seq.*).  *See generally* **Exhibit B** (FAC), ¶¶ 60-139.

7.    The FAC, which amended the class definition in the Complaint to include all residents in the United States who "purchased a Purported USB 3.0 Laptop," is styled as a nationwide class action complaint pursuant to California Code of Civil Procedure section 382, the state statute authorizing an action to be brought by one or more representative persons as a class action.  **Exhibit B** (FAC), ¶ 48.  The FAC also expands the size of the class greatly, from over 1,000 people to over 500,000 people.  *Id.*, ¶ 50.

8.    The FAC also adds an allegation that the amount in controversy exceeds $5,000,000.  **Exhibit B** (FAC), ¶ 17.

9.    Plaintiff alleges that he is a resident of San Francisco, California.  **Exhibit B** (FAC), ¶ 4.

10.    ACI is a California corporation, with its principal place of business in Fremont, California.  **Exhibit B** (FAC), ¶ 5.

11.    ASUSTeK is a Taiwanese corporation with its headquarters in Taiwan.  **Exhibit B** (FAC), ¶ 6.

12.    Aside from the documents contained within **Exhibits A, B** and **C**, ASUS has not been served with any other process, pleadings, or orders in the State Court Action.

13.    Aside from a Case Management Conference scheduled for June 5, 2019, there are no other upcoming proceedings scheduled in the State Court Action.

## II.    GROUNDS FOR FEDERAL JURISDICTION AND REMOVAL

14.    A defendant may remove any civil action that is brought in a state court over which the United States district courts have original jurisdiction.  *See* 28 U.S.C. § 1441(a).

15.    Pursuant to 28 U.S.C. section 1332, as amended by the Class Action Fairness Act ("CAFA"), original federal jurisdiction extends over putative class actions commenced after February 18, 2005—the effective date of CAFA—where: (1) the proposed class consists of more than 100 members in the aggregate; (2) any member of the proposed class is a citizen of a state different from any defendant (*i.e.*, where minimal diversity exists); and (3) the amount in

controversy is $5 million or more, aggregating all claims, and exclusive of interests and costs. *See* 28 U.S.C. §§ 1332(d)(2), 1332(d)(5)(B), 1332(d)(6).

16.    While there are a number of exceptions to this rule of original jurisdiction contained in 28 U.S.C. section 1332(d)(3)-(5), (9), none of those exceptions are applicable here.

17.    CAFA applies to the State Court Action because the State Court Action was commenced on or around November 28, 2018, after CAFA's February 18, 2005 effective date. *See* Notes to 28 U.S.C. §§ 1332, 1453 ("The Amendments made by this Act shall apply to any civil action commenced on or after the date of enactment by this Act [February 18, 2005]"), citing Pub. L. 109-2, §9, 119 Stat. 14.  In addition, the State Court Action is a "class action" within the meaning of CAFA because it is a "civil action filed under" California Code of Civil Procedure section 382 (**Exhibit B** (FAC), ¶ 48), which is a "rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action."  *See* 28 U.S.C. § 1332(d)(1)(B) ("the term 'class action' means any civil action filed under rule 23 of the Federal Rules of Civil Procedure or similar State statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action"); *see also* 28 U.S.C. § 1453(a) (stating that as it applies to removal of class actions, the term "'class action' … shall have the meaning[] … under section 1332(d)(1)").  Based on the facts as alleged, there is no question that there are more than 100 members of the putative class, that minimal diversity between the class and ASUS exists and that the $5,000,000 jurisdictional minimum is satisfied such that removal of the State Court Action to this Court is proper.

## A.    Class Numerosity

18.    Plaintiff alleges a class consisting of "all persons . . . who, while residing in the United States, purchased a Purported USB 3.0 Laptop between November 21, 2014 and the present."  **Exhibit B** (FAC), ¶ 48.  Plaintiff further alleges that the size of the proposed class "is well in excess of 500,000 people."  **Exhibit B** (FAC), ¶ 50.  Accordingly, based on the allegations of the FAC, the putative class as defined in the FAC consists of more than 100 members and CAFA's numerosity requirement is satisfied.

-4-

**B.    Minimal Diversity**

19.    In addition, CAFA's requirement for minimal diversity, set forth in 28 U.S.C. sections 1332(d)(2) and (d)(7), must be present.  CAFA requires only that at least one named plaintiff or putative class member be diverse from at least one of the named defendants based upon the citizenship of the defendants.  28 U.S.C. §§ 1332 (d)(1)(D); 1332(d)(2)(A).  Plaintiff purports to represent a nationwide class which thus includes class members residing in all fifty states.  CAFA's minimal diversity requirement is satisfied because Plaintiff alleges that he and ACI are California residents, that ASUSTeK is a resident of Taiwan, and that the putative class members are residents of all fifty states.  **Exhibit B** (FAC), ¶¶ 4-6, 48.  Accordingly, ACI and ASUSTeK are citizens of a state (or country) that is different from at least one member of the putative class.  *See Swearingen v. Yucatan Foods, L.P.*, 24 F. Supp. 3d 889, 895 (N.D. Cal. 2014), *on reconsideration*, 59 F. Supp. 3d 961 (N.D. Cal. 2014) (finding minimal diversity requirement satisfied because claims were asserted on behalf of a "proposed class of consumers throughout the United States").

**C.    Amount in Controversy**

20.    The ultimate inquiry is what amount is put "in controversy" by the complaint, not what a defendant will actually owe.  *Lewis v. Verizon Commc'ns, Inc.*, 627 F.3d 395, 400 (9th Cir. 2010) (holding that the amount in controversy is "simply an estimate of the total amount in dispute, not a prospective assessment of defendant's liability" or "proof of the amount the plaintiff will recover.");  *Ray v. Wells Fargo Bank, N.A.*, No. CV 11-1477 AHM (JCx), 2011 WL 1790123, at *5 (C.D. Cal. May 9, 2011) (citing *Korn v. Polo Ralph Lauren Corp.*, 536 F. Supp. 2d 1199, 1204-05 (E.D. Cal. 2008)); *see also Valdez v. Allstate Ins. Co.*, 372 F.3d 1115, 1117 (9th Cir. 2004) ("The parties need not predict the trier of fact's eventual award with one hundred percent accuracy.").  "'No antiremoval presumption attends cases invoking CAFA' because 'Congress enacted [CAFA] to facilitate adjudication of certain class actions in federal court.'" *Adams v. Toys 'R' Us - Delaware, Inc.*, No. 14-CV-05550-MEJ, 2015 WL 395214, at *2 (N.D. Cal. Jan. 29, 2015) (quoting *Dart Cherokee Basin Operating Co., LLC v. Owens*, --- U.S. ---, 135 S. Ct. 547, 554 (2014)).

21.     "[A] defendant's notice of removal need only include a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart*, 135 S. Ct. at 554 (2014). In measuring the "amount in controversy," the court assumes that Plaintiff will prevail on each cause of action alleged in the complaint. *See Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413, 414-15 (9th Cir. 2018) ("the amount in controversy . . . encompasses all relief a court may grant on that complaint if the plaintiff is victorious"). Evidence of the amount in controversy is required only when the plaintiff contests, or the court questions, the defendant's allegation. *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015). In that circumstance, "[t]he parties may submit evidence outside the complaint, including affidavits or declarations, or other summary-judgment-type evidence relevant to the amount in controversy at the time of removal." *Ibarra*, 775 F.3d at 1198.

22.     Based on the allegations of the FAC, CAFA's amount in controversy requirement is met. Plaintiff expressly alleges that the amount in controversy exceeds $5,000,000, which includes compensatory damages, punitive damages, statutory damages, and restitution. **Exhibit B** (FAC), ¶ 17.

**III.     COMPLIANCE WITH REMOVAL STATUTE**

23.     **Removal to Proper Court**. Assignment to this Court is proper because it is part of the "district and division" embracing the place where the State Court Action was filed – Superior Court, San Francisco County. *See* 28 U.S.C. § 1446(a).

24.     **Removal is Timely**. The original Complaint was not removable under CAFA, as minimal diversity was lacking. The FAC, which was served on April 26, 2019, was amended to allege a nationwide class, so the requisite minimal diversity is now present. This Notice of Removal is timely under 28 U.S.C. section 1446(b)(3) because it is being filed within thirty (30) days of ASUS' receipt of "an amended pleading . . . from which is may first be ascertained that the case is one which is or has become removable."

25.     **Pleadings and Process**. Pursuant to 28 U.S.C. section 1446(a), attached hereto as **Exhibits A**, **B** and **C** is a copy of the docket and all process, pleadings, and orders served on ASUS in the State Court Action.

26.    **Filing and Service**. Pursuant to 28 U.S.C. § 1446(d), a copy of this Notice of Removal is being served upon Plaintiff in the State Court Action and a copy, along with a Notice of Filing of Notice of Removal, is being filed with the Clerk of the Superior Court of California, San Francisco County.   A copy of said Notice of Filing of Notice of Removal (without exhibits) is attached hereto as **Exhibit D**.

27.    **Other Defendants**. There are no other defendants.  In any event, consent to removal is not required with respect to removal under CAFA.  *See* 28 U.S.C. § 1453(b).

28.    **Proper Signature**.  Counsel for ASUS hereby certifies, pursuant to 28 U.S.C. section 1446(a), that this Notice of Removal is signed pursuant to Rule 11 of the Federal Rules of Civil Procedure.

29.    Based upon the foregoing, this Court has jurisdiction over this matter pursuant to 28 U.S.C. section 1332(d), and the claims may be removed to this Court under 28 U.S.C. section 1441(a).

## IV.    REQUEST FOR ADDITIONAL ARGUMENTS AND EVIDENCE, IF NECESSARY

30.    In the event that Plaintiff files a request to remand, or the Court considers remand *sua sponte*, ASUS respectfully requests the opportunity to submit additional argument or evidence in support of removal.

WHEREFORE, this action should proceed in the United States District Court for the Northern District of California, as an action properly removed thereto.

Dated: April 29, 2019                                   Respectfully submitted,


By: /s/ Robert B. Bader
_____
LUANNE SACKS
MICHELE FLOYD
ROBERT B. BADER
JACQUELINE YOUNG
SACKS, RICKETTS & CASE LLP

Attorneys for Defendants
ASUS COMPUTER INTERNATIONAL
and ASUSTEK COMPUTER, INC.

-7-

# EXHIBIT A

CM-010

**ATTORNEY OR PARTY WITHOUT ATTORNEY** *(Name, State Bar number, and address):*

Seth Safier, Esq., SBN 197427, Gutride Safier LLP, 100 Pine Street, SF, CA 94111
seth@gutridesafier.com

TELEPHONE NO: 415-336-6545   FAX NO: 415-449-6469
ATTORNEY FOR *(Name):* Plaintiff Brekhus

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF** San Francisco
STREET ADDRESS: 400 McAllister Street
MAILING ADDRESS: 400 McAllister Street
CITY AND ZIP CODE: San Francisco, CA 94102
BRANCH NAME: SF Superior Court

CASE NAME:
Brekhus v. Asus Computer International

**FOR COURT USE ONLY**

# FILED
San Francisco County Superior Court

NOV 26 2018

CLERK OF THE COURT
BY: _Chalene Fobric_
Deputy Clerk

**FILE BY FAX**

| CIVIL CASE COVER SHEET | | Complex Case Designation | CASE NUMBER: |
|---|---|---|---|
| ☑ Unlimited (Amount demanded exceeds $25,000) | ☐ Limited (Amount demanded is $25,000 or less) | ☐ Counter   ☐ Joinder   Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | CGC-18-571553 |
| | | | JUDGE: |
| | | | DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

| Auto Tort | Contract | Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403) |
|---|---|---|
| ☐ Auto (22) | ☐ Breach of contract/warranty (06) | ☐ Antitrust/Trade regulation (03) |
| ☐ Uninsured motorist (46) | ☐ Rule 3.740 collections (09) | ☐ Construction defect (10) |
| **Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort** | ☐ Other collections (09) | ☐ Mass tort (40) |
| ☐ Asbestos (04) | ☐ Insurance coverage (18) | ☐ Securities litigation (28) |
| ☐ Product liability (24) | ☐ Other contract (37) | ☐ Environmental/Toxic tort (30) |
| ☐ Medical malpractice (45) | **Real Property** | ☐ Insurance coverage claims arising from the above listed provisionally complex case types (41) |
| ☐ Other PI/PD/WD (23) | ☐ Eminent domain/Inverse condemnation (14) | |
| **Non-PI/PD/WD (Other) Tort** | ☐ Wrongful eviction (33) | **Enforcement of Judgment** |
| ☑ Business tort/unfair business practice (07) | ☐ Other real property (26) | ☐ Enforcement of judgment (20) |
| ☐ Civil rights (08) | **Unlawful Detainer** | **Miscellaneous Civil Complaint** |
| ☐ Defamation (13) | ☐ Commercial (31) | ☐ RICO (27) |
| ☐ Fraud (16) | ☐ Residential (32) | ☐ Other complaint *(not specified above)* (42) |
| ☐ Intellectual property (19) | ☐ Drugs (38) | **Miscellaneous Civil Petition** |
| ☐ Professional negligence (25) | **Judicial Review** | ☐ Partnership and corporate governance (21) |
| ☐ Other non-PI/PD/WD tort (35) | ☐ Asset forfeiture (05) | ☐ Other petition *(not specified above)* (43) |
| **Employment** | ☐ Petition re: arbitration award (11) | |
| ☐ Wrongful termination (36) | ☐ Writ of mandate (02) | |
| ☐ Other employment (15) | ☐ Other judicial review (39) | |

2. This case ☐ is ☑ is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. ☐ Large number of separately represented parties
   b. ☐ Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. ☐ Substantial amount of documentary evidence
   d. ☐ Large number of witnesses
   e. ☐ Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. ☐ Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a. ☑ monetary   b. ☑ nonmonetary; declaratory or injunctive relief   c. ☑ punitive
4. Number of causes of action *(specify):* 7
5. This case ☑ is ☐ is not a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: 11/19/18

Seth Safier _____
*(TYPE OR PRINT NAME)*

▶ _____
*(SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)*

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. July 1, 2007]

**CIVIL CASE COVER SHEET**

Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10
*www.courtinfo.ca.gov*

SUM-100

# SUMMONS
## *(CITACION JUDICIAL)*

FOR COURT USE ONLY
*(SOLO PARA USO DE LA CORTE)*

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

ASUS COMPUTER INTERNATIONAL

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

EDWARD BREKHUS, an individual, on behalf of himself, the general public, and those similarly situated

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is:
*(El nombre y dirección de la corte es):*
San Francisco Superior Court, 400 McAllister Street, San Francisco, CA 94102

CASE NUMBER:
*(Número del Caso):*
CGC-18-571553

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Seth Safier, Gutride Safier LLP, 100 Pine St., #1250, San Francisco, CA 94111, 415-336-6545

DATE: NOV 26 2018
*(Fecha)*
CLERK OF THE COURT, by KALENE APOLONIO, Deputy
*(Secretario)* *(Adjunto)*

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☐ on behalf of *(specify):*

under: ☐ CCP 416.10 (corporation)       ☐ CCP 416.60 (minor)
       ☐ CCP 416.20 (defunct corporation)  ☐ CCP 416.70 (conservatee)
       ☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
       ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
*www.courtinfo.ca.gov*

FILE BY FAX

GUTRIDE SAFIER LLP

Adam J. Gutride (State Bar No. 181446)
   adam@gutridesafier.com
Seth A. Safier (State Bar No. 197427)
   seth@gutridesafier.com
Todd Kennedy (State Bar No. 250267)
   todd@gutridesafier.com
100 Pine Street, Suite 1250
San Francisco, California 94111
Telephone: (415) 789-6390
Facsimile: (415) 449-6469

Attorneys for Plaintiff

**F I L E D**

San Francisco County Superior Court

NOV 26 2018

CLERK OF THE COURT

BY: _____
               Deputy Clerk

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF SAN FRANCISCO

**CGC-18-571553**

EDWARD BREKHUS, an
individual, on behalf of himself, the
general public, and those similarly
situated,

           Plaintiff,

  v.

ASUS COMPUTER
INTERNATIONAL,

           Defendant.

Case No. _____

Unlimited Civil Case

Class Action Complaint for Fraud,
Deceit, and/or Misrepresentation;
Violation of the Consumer Legal
Remedies Act; False Advertising;
Negligent Misrepresentation; Unfair,
Unlawful, and Deceptive Trade
Practices; Breach of Implied Warranty;
and Violation of the Song-Beverly
Consumer Warranty Act

Jury Trial Demanded

Edward Brekhus, by and through his counsel, brings this Class Action Complaint against Defendant, on behalf of himself, and those similarly situated, for fraud, deceit, and/or misrepresentation; violation of the Consumer Legal Remedies Act; false advertising; negligent misrepresentation; unfair, unlawful, and deceptive trade practices; breach of express warranty; and violation of the Song-Beverly Consumer Warranty Act. The following allegations are based upon information and belief, including the investigation of Plaintiff's counsel, unless stated otherwise.

## Introduction

1. This case concerns laptop computers that were marketed and sold by ASUS as including Universal Serial Bus ("USB") 3.0 "Gen 1" ports (hereinafter referred to as the "Purported USB 3.0 Laptops.") ASUS specifically marketed, advertised and represented to consumers that the USB ports of the Purported USB 3.0 Laptops were capable of transferring data at rates of 5 gigabits (Gb) per second.

2. ASUS's representations are false. As Plaintiff discovered after purchasing a Purported USB 3.0 Laptop advertised with a data transfer rate of 5Gb/s, the USB ports are incapable of transferring data at anywhere near the speeds advertised. Rather, the USB ports are capable of transferring data at a rate of only about 2,160 megabits/second—less than half as fast as advertised.

3. In fact, the USB ports on the Purported USB 3.0 Laptops are not really USB 3.0 ports. The USB 3.0 specification states that Gen 1 USB 3.0 hosts must be capable of transferring data at a "SuperSpeed" rate of 5 gigabits/second. As stated above, the USB ports of the Purported USB 3.0 Laptops—even when operating at their highest speeds—only transfer data at less than half of the required 5 gigabits/second rate.

## Parties

4.    Edward Brekhus is, and at all times alleged in this Class Action Complaint was, an individual and a resident of California. Mr. Brekhus currently resides in San Francisco, California.

5.    Defendant ASUS Inc. is a corporation incorporated under the laws of the state of California, having its principal place of business in Fremont, California.

## Jurisdiction and Venue

6.    This action is brought by Plaintiff pursuant, inter alia, to the California Business and Professions Code, section 17200, et seq. Plaintiff and Defendant are "persons" within the meaning of the California Business and Professions Code, section 17201.

7.    The injuries, damages and/or harm upon which this action is based, occurred or arose out of activities engaged in by Defendants within, affecting, and emanating from, the State of California.

8.    Defendants have engaged, and continue to engage, in substantial and continuous business practices in the State of California, including in the City of San Francisco and County of San Francisco.

9.    In accordance with California Civil Code Section 1780(d), Plaintiff files herewith a declaration establishing that he purchased an ASUS laptop X Series X555UB-NH51computer on Newegg.com, while residing in San Francisco, California.

10.    Plaintiff accordingly alleges that jurisdiction and venue are proper in this Court.

**Substantive Allegations**

11.    The market for laptop computers is fiercely competitive. Laptop manufacturers continually attempt to gain market share by introducing the latest cutting-edge features that are attractive to consumers. One such feature is the inclusion of one or more "USB 3.0" ports—data ports (otherwise known as "hosts")—that comply with Revision 3.0 of the USB specification.

**A. The USB Specification and its Data Transfer Rate Requirements**

12.    The USB specification was developed by a number of companies that collectively formed the USB Implementers Forum, Inc. ("Implementers Forum"), a non-profit corporation organized for the purposes of developing and distributing specifications and other documents that augment, enhance, or extend the USB specification.

13.    The Implementers Forum released the USB 1.0 specification in 1996. The USB 1.0 specification specified two data transmission modes: (i) "Low-Bandwidth" (providing 1.5 megabits/s); and (ii) "Full-Bandwidth" (providing 12 megabits/s).

14.    In April 2000, the Implementers Forum released the USB 2.0 specification, which added a third data transmission mode: "Hi-Speed" (providing 480 megabits/s).

15.    On November 12, 2008, the Implementers Forum released the USB 3.0 specification, which added a fourth data transmission mode: "SuperSpeed" (providing 5 gigabits/s). As described in the most recent version of the USB specification, "USB 3.0 was the USB community's response and provided users with the ability to move data at rates up to 450MB/s while retaining backward

compatibility with USB 2.0." The term "SuperSpeed" is expressly defined by the USB 3.0 specification as being "USB operation at 5 Gbps":[1]

| Term/Abbreviation | Definition |
|---|---|
| SuperSpeed | USB operation at 5 Gbps. |

### 3.1.4   USB 3.0 Architecture Summary

USB 3.0 is a dual-bus architecture that incorporates USB 2.0 and a SuperSpeed bus. Table 3-1 summarizes the key architectural differences between SuperSpeed USB and USB 2.0.

Table 3-1.  Comparing SuperSpeed to USB 2.0

| Characteristic | SuperSpeed USB | USB 2.0 |
|---|---|---|
| Data Rate | SuperSpeed (5.0 Gbps) | low-speed (1.5 Mbps), full-speed (12 Mbps), and high-speed (480 Mbps) |

16.    The USB 3.0 Specification refers to the USB ports of personal computers—like the laptop computers at issue here—as "hosts." Like all USB 3.0-compliant devices, hosts must be capable of transferring data at rates corresponding to all four data transfer modes, including SuperSpeed:



17.    The Implementers Forum owns the trademarks to a number of logos corresponding to USB. One such logo is the "SuperSpeed USB Trident" logo:



The USB Logo Usage Guidelines state: "The SuperSpeed USB Trident Logo is for use with product that signals at 5 Gbps" (i.e., 5 gigabits/second) (*Id.*) The

---

[1] "Mbit/s" refers to Megabits per second. A Megabit (which is different from a "Megabyte") is equivalent to 125 kilobytes.

Guidelines further state that the logo can be used only with a product "based on and compliant with the USB 3.0 and USB 3.0 Gen1 specifications." (*Id.*)

**B. ASUS's Purported USB 3.0 Laptops**

18.    ASUS has marketed and sold dozens of laptop computers that purportedly have USB 3.0 ports.

19.    ASUS repeatedly represents on its website that the Purported USB 3.0 Laptops' USB 3.0 ports are ten times faster than USB 2.0 ports. That representation, which Mr. Brekhus saw before purchasing the laptop and relied on in making his purchasing decision, is false. The USB 2.0 specification requires a transfer rate of 480 Mbit/s. Ten times that rate—4,800 Mbit/s—is not achievable by the ASUS USB 3.0 Laptops under any circumstances.

20.    ASUS also included various versions of the USB Trident Logo next to the USB ports of the Purported USB 3.0 Laptops. The following photograph is of the model plaintiff purchased:



Although the photograph above does not show it as clearly as would be seen by a consumer viewing an actual laptop, the SuperSpeed Trident Logo appears on the left side of each USB port above.

21.    As set forth below (*inter alia*, *see supra*, ¶¶ 27-39), Plaintiff saw these representations prior to making his purchase, and relied on them in making his purchase.

22.    ASUS sells the Purported USB 3.0 Laptops through various retailers, including both brick-and-mortar retailers and online retailers.

23.    To promote the sale of the Purported USB 3.0 Laptops, ASUS provides to all such retailers information relating to the laptops. ASUS represents to all its retailers that the Purported USB 3.0 Laptops have USB 3.0 ports that are ten times faster than USB 2.0 ports.

24.    ASUS makes these statements and representations to retailers with the knowledge and intent that the retailers will present this information to consumers.

25.    At no time did ASUS inform consumers or its retailers that the Purported USB 3.0 Laptops do not have USB 3.0 ports.

26.    At no time did ASUS inform consumers or its retailers that the USB ports of the Purported USB 3.0 Laptops are incapable of transferring data at the 5 gigabits/second rate required by the USB 3.0 specification, let alone the faster rates advertised by ASUS for some models of the Purported USB 3.0 Laptops.

**C. Plaintiff's Purchase of a Purported USB 3.0 Laptop and Discovery That It Lacks USB 3.0 Ports**

27.    In late 2015, Plaintiff was shopping for a new laptop. He was specifically looking for a highly portable laptop that could transfer data to and from external USB 3.0 storage devices. Plaintiff researched his options using a variety of resources available on the Internet, including ASUS's website.

28.    One of the laptops advertised on ASUS's website was the ASUS X Series X555UB-NH51. Plaintiff saw the representation on ASUS's website that the X Series had USB 3.0 ports, capable of transferring data ten times faster than USB 2.0 ports. Plaintiff also saw the product specifications on the website, stating that the laptop had two USB 3.0 ports.

29.    The inclusion of USB 3.0 ports, along with the advertised rapid transfer rate of these ports, was important to Plaintiff because he intended to access and transfer large files from external USB 3.0 storage devices.

30.    In reliance on Defendant's representations, Plaintiff purchased the X Series, in November 29, 2015, from Newegg.com.

31.    After purchasing and using the X Series, Plaintiff discovered that the laptop's purported USB 3.0 ports are incapable of achieving the 5.0 gigabits/second data transfer rates required by the USB 3.0 specification and advertised by ASUS.

32.    Plaintiff's investigator independently verified Plaintiff's discovery that the X Series' purported USB 3.0 ports transfer files at rates far below the USB 3.0 specification.

33.    In 2018, Plaintiff's investigator obtained the same model of laptop that plaintiff had purchased (i.e., the ASUS X Series X555UB-NH51), for the purposes of testing the transfer speed of the laptop's USB ports. The tests revealed that the transfer rate was, at best, only 2,160 megabits (i.e., 2.16 gigabits) per second. That rate is only about 43% as fast as the 5 gigabit/second speed required by the USB 3.0 specification and advertised by ASUS for the X Series.

34.    All tests described above were performed on the X Series as it existed after being taken out of the box. No other applications were running on the X Series when the tests were performed. No other hardware devices were connected to the X Series. Accordingly, the investigator's tests show how the X Series' purported USB 3.0 ports operate in the best-case scenario under normal use.

35.    Had Plaintiff known that the X Series' USB data transfer rates were so slow, or that they were not in compliance with the USB 3.0 specification, he would not have paid as much for the X Series.

36.    As a result of ASUS's misrepresentations, Plaintiff has sustained an out of pocket loss in, at a minimum, the difference in price between an X Series with the USB 3.0 specification and one with a USB 2.0 specification, which could be established using regression techniques such as hedonic regression to analyze market prices of various laptop computers with USB 3.0 and/or USB 2.0 ports and/or survey techniques such as conjoint analysis.

37.    Plaintiff intends to purchase ASUS products in the future and specifically wishes to purchase an ASUS computer with a USB 3.0 complaint port so that he can benefit from the higher transfer speeds.  He therefore is likely to be deceived again by any misrepresentations with respect to the USB capabilities of such ASUS products. Plaintiff will be unable to determine whether such representations are false without purchasing and testing such ASUS products.

38.    Before ASUS released its Purported USB 3.0 Laptops, it tested the speed of their USB ports, and was aware of the transfer rates of which they were capable. ASUS—one of the world's largest manufacturers of consumer electronics—would not release a product without first testing each of its components.

39.    In addition, the USB Implementers Forum, of which ASUS is a board member, requires manufacturers to ensure that their devices actually conform with the USB 3.0 specification, which includes testing the speed of those devices. (*See, e.g.*, Ex. B at 1-2 ("Adopters [of the USB 3.0 specification] can demonstrate compliance with the specification through the testing program as defined by the USB Implementers Forum.") Accordingly, ASUS knew that the purported USB 3.0 ports were incapable of achieving speeds anywhere near the 5 gigabits/second speed that it advertised and that was required by the USB 3.0 specification.

### Class Allegations

40.    In addition to his individual claims, Plaintiff brings this action as a class action pursuant to section 382 of the California Code of Civil Procedure and section 1781 of the California Civil Code on behalf of a Class consisting of all persons, natural or otherwise, who, while residing in California, purchased a Purported USB 3.0 Laptop between November 21, 2014 and the present.

41.    Excluded from the Class are ASUS, its affiliates, successors and assigns, officers and directors, and members of their immediate families.

42.    The proposed Class is so numerous that joinder of all members is impracticable. The precise number of members in the Class is not yet known to Plaintiff, but he estimates that it is well in excess of 1,000 people.

43.    There are questions of law and fact that are common to the Class, including, but not limited to, the following:

- whether the USB ports of the Purported USB 3.0 Laptops are capable of transferring data at the rates advertised by ASUS;

- whether the USB ports of the Purported USB 3.0 Laptops are capable of the data transfer speeds required by the USB 3.0 specification;

- whether ASUS misled class members by representing that the USB ports of the Purported USB 3.0 Laptops are capable of the data transfer speeds required by the USB 3.0 specification;

- whether ASUS misled class members by representing that the USB ports of the Purported USB 3.0 Laptops are capable of transferring data up to 10 times faster than the rates called for by the USB 2.0 specification;

- whether the USB Ports of the Purported USB 3.0 Laptops are actually USB 3.0 ports, as defined by the Implementers Forum's USB 3.0 Specification;

- whether ASUS breached its obligations to the class;

- whether ASUS engaged in the alleged conduct knowingly, recklessly, or negligently;

- the amount of revenues and profits ASUS received and/or the amount of monies or other obligations lost by class members as a result of such wrongdoing;

- whether class members are entitled to injunctive relief and other equitable relief and, if so, what is the nature of such relief; and

- whether class members are entitled to payment of actual, incidental, consequential, exemplary, and/or statutory damages plus interest, and if so, what is the nature of such relief.

44.     Plaintiff's claims against ASUS are typical of the claims of the Class because Plaintiff and all other members of the class purchased a Purported USB 3.0 Laptop with the same attendant advertising, warranties, and web-based representations and documentation. With respect to the class allegations, Plaintiff was subject to the exact same business practices and written representations.

45.     Plaintiff will fairly and adequately protect the interests of the Class.

46.     Plaintiff has demonstrated his commitment to the case, has diligently educated himself as to the issues involved, and to the best of his knowledge does not have any interests adverse to the proposed class.

47.     The questions of law and fact common to the members of the class predominate over any questions affecting only individual members.

48.     A class action is superior to other available methods for a fair and efficient adjudication of this controversy as many members of the proposed class have damages arising from ASUS's wrongful course of conduct which would not be susceptible to individualized litigation of this kind, including, but not limited to, the costs of experts and resources that may be required to examine the business practices in question.

49.     Given the relative size of damages sustained by the individual members of the Class, the diffuse impact of the damages, and homogeneity of the issues, the interests of members of the Class individually controlling the prosecution of separate actions is minimal.

50.     There is no litigation already commenced, nor is there anticipated to be subsequent litigation commenced by other members of the Class concerning ASUS's alleged conduct. Consequently, concerns with respect to the maintenance of a class action regarding the extent and nature of any litigation already commenced by members of the Class are non-existent.

51.     Plaintiff is unaware of any difficulties that are likely to be encountered in the management of this Class Action Complaint that would preclude its maintenance as a class action.

## CAUSES OF ACTION

### Plaintiff's First Cause of Action
### (Fraud, Deceit and/or Misrepresentation)
### On Behalf of Himself and the Class

52.     Plaintiff realleges and incorporates by reference all preceding paragraphs of this complaint as if fully set forth herein.

53.     As set forth above (*inter alia*, *see supra*, ¶¶ 24-31), ASUS represented to Plaintiff and those similarly situated that the Purported USB 3.0 Laptops include USB 3.0 ports. By engraving the SuperSpeed Trident Logo into the Purported USB 3.0 Laptops, ASUS also represented that the USB ports are "SuperSpeed" ports. Further, by claiming that the USB ports were "SuperSpeed" ports, ASUS represented that the ports could transfer data at the rate of 5 gigabits per second (i.e., the rate required by the USB 3.0 Specification). ASUS further represented that the USB 3.0 ports transfer data ten times faster than the 480 megabits per second rate required by the USB 2.0 specification (i.e., 4.8 gigabits per second). (As used herein, the term "Advertised Speeds" shall refer collectively to the 5.0 gigabits/second speed and the 4.8 gigabits/second speed advertised by ASUS.)

54.    ASUS further concealed, suppressed, and omitted material facts that would have revealed that the Purported USB 3.0 Laptops do not, in fact, have USB 3.0 ports or "SuperSpeed" ports, and that the USB ports of the Purported USB 3.0 Laptops are not, in fact, capable of transferring data at the Advertised Speeds.

55.    In addition, ASUS represented to all retailers of the Purported USB 3.0 Laptops, including online retailers (including Newegg.com), and brick-and-mortar retailers, that the Purported USB 3.0 Laptops include USB 3.0 "SuperSpeed" ports, and that the ports are capable of transferring data at the Advertised Speeds. ASUS made these representations by providing to such retailers specifications of the Purported USB 3.0 Laptops, stating that the laptops have USB 3.0 ports capable of transferring data at the Advertised Speeds. ASUS further concealed, suppressed, and omitted material facts that would have revealed that the Purported USB 3.0 Laptops did not, in fact, contain USB 3.0 ports capable of transferring data at Advertised Speeds or the rates required by the USB 3.0 Specification.

56.    ASUS made these representations to retailers with the knowledge and intent that the retailers (such as Best Buy) would represent to Plaintiff, and others similarly situated, that the Purported USB 3.0 Laptops include USB 3.0 "SuperSpeed" ports capable of transferring data at the Advertised Speeds.

57.    ASUS's representations—both those made directly to consumers on ASUS's website and on the product, and those made indirectly to consumers through retailers—were false, and ASUS knew that the representations were false when it made them. In particular, as described above (*supra*, ¶¶ 38-39), ASUS tested the speed of its purported USB 3.0 ports, and confirmed that the ports were incapable of achieving the Advertised Speeds.

58.    ASUS's misrepresentations and omissions were material at the time they were made. They concerned material facts that were essential to the analysis

undertaken by Plaintiff and those similarly situated as to whether to purchase the Purported USB 3.0 Laptops.

59.    Plaintiff and those similarly situated reasonably relied to their detriment on ASUS's representations—both those that ASUS made directly to them, and those that ASUS made indirectly to them through retailers. Specifically, Plaintiff and those similarly situated purchased Purported USB 3.0 Laptops because they believed that they had USB 3.0 ports, and that the ports were capable of achieving the Advertised Speeds. This reliance was reasonable because Plaintiff and those similarly situated could not test whether the laptops' USB ports were actually USB 3.0 ports prior to purchasing them.

60.    Had Plaintiff and those similarly situated been adequately informed and not intentionally deceived by ASUS, they would have acted differently by, without limitation, not purchasing (or paying less for) the Purported USB 3.0 Laptops.

61.    ASUS had a duty to inform members of the Class at the time of their purchase that the Purported USB 3.0 Laptops did not have USB 3.0 "SuperSpeed" ports; that the USB ports on the laptops were incapable of transferring data at the Advertised Speeds. In making its representations and omissions, ASUS breached its duty to class members. ASUS also gained financially from, and as a result of, its breach.

62.    By and through such fraud, deceit, misrepresentations and/or omissions, ASUS intended to induce Plaintiffs and those similarly situated to alter their position to their detriment. Specifically, ASUS fraudulently and deceptively induced Plaintiffs and those similarly situated to, without limitation, to purchase the Purported USB 3.0 Laptops.

63.    As a direct and proximate result of ASUS's misrepresentations and omissions, Plaintiffs and those similarly situated have suffered damages. In

particular, Plaintiffs seek to recover on behalf of themselves and those similarly

situated the amount of the price premium they paid (i.e., the difference between

the price consumers paid for the Purported USB Laptops and the price they would

have paid but for Defendant's misrepresentations), in an amount to be proven at

trial using econometric or statistical techniques such as hedonic regression or

conjoint analysis.

64.    ASUS's conduct as described herein was willful and malicious and was

designed to maximize ASUS's profits even though ASUS knew that it would

cause loss and harm to Plaintiffs and those similarly situated.

**Plaintiff's Second Cause of Action**
**(Violation of the Consumers Legal Remedies Act,**
**California Civil Code § 1750, et seq.)**
**On Behalf of Himself and the Class**

65.    Plaintiff realleges and incorporates by reference the paragraphs of this

Class Action Complaint as if set forth herein.

66.    This cause of action is brought pursuant to the California Consumers

Legal Remedies Act, California Civil Code § 1750, et seq. ("CLRA").

67.    ASUS's actions, representations and conduct have violated, and

continue to violate the CLRA, because they extend to transactions that are

intended to result, or which have resulted, in the sale of goods to consumers.

68.    Plaintiff and other members of the class are "consumers" as that term is

defined by the CLRA in California Civil Code § 1761(d).

69.    The products that Plaintiff and similarly situated members of the class

purchased from ASUS are "goods" within the meaning of California Civil Code §

1761.

70.    By engaging in the actions, representations, and conduct set forth in

this Class Action Complaint, ASUS has violated, and continue to violate,

§§ 1770(a)(2), 1770(a)(3), 1770(a)(4), 1770(a)(5), 1770(a)(7), and 1770(a)(9) of

the CLRA. In violation of California Civil Code §1770(a)(2), ASUS misrepresented the approval or certification of goods. In violation of California Civil Code §1770(a)(3), ASUS misrepresented the certification by another. In violation of California Civil Code §1770(a)(4), ASUS used deceptive representations in connection with goods. In violation of California Civil Code §1770(a)(5), ASUS represented that goods have approval, characteristics, uses, benefits, and qualities that they do not have. In violation of California Civil Code §1770(a)(7), ASUS's acts and practices constitute improper representations that the goods and/or services it sells are of a particular standard, quality, or grade, when they are of another. In violation of California Civil Code §1770(a)(9), ASUS advertised goods with intent not to sell them as advertised.

71.    Specifically, ASUS's acts and practices lead consumers to believe that the Purported USB 3.0 Laptops contain USB 3.0 "SuperSpeed" ports, and that the laptops' USB ports are capable of transferring data at the Advertised Speeds. To the contrary, the Purported USB 3.0 Laptops do not have USB 3.0 ports, and the laptops' USB ports are incapable of transferring data at the Advertised Speeds.

72.    Plaintiff requests that this Court enjoin ASUS from continuing to employ the unlawful methods, acts and practices alleged herein pursuant to California Civil Code § 1780(a)(2). If ASUS is not restrained from engaging in these types of practices in the future, Plaintiff and other members of the class will continue to suffer harm.

73.    CLRA § 1782 NOTICE. On or around March 26, 2018, Plaintiff, provided ASUS with notice and demand that within thirty (30) days from that date, ASUS correct, repair, replace or otherwise rectify the unlawful, unfair, false and/or deceptive practices complained of herein. ASUS failed to do so. Accordingly, Plaintiff seeks, pursuant to California Civil Code § 1780(a)(3), on behalf of himself and those similarly situated class members, compensatory

damages, punitive damages and restitution of any ill-gotten gains due to Defendants' acts and practices.

74.    Plaintiff also requests that this Court award him costs and reasonable attorneys' fees pursuant to California Civil Code § 1780(d).

**Plaintiff's Third Cause of Action**
**(False Advertising, Business and Professions Code § 17500, et seq. ("FAL"))**
**On Behalf of Himself and the Class**

75.    Plaintiff realleges and incorporates by reference the paragraphs of this Class Action Complaint as if set forth herein.

76.    Beginning at an exact date unknown to Plaintiff, but within three (3) years preceding the filing of the Class Action Complaint, ASUS has made untrue, false, deceptive and/or misleading statements in connection with the advertising and marketing of the Purported USB 3.0 Laptops.

77.    ASUS has made representations and statements (by omission and commission) that lead reasonable consumers to believe that the Purported USB 3.0 Laptops have USB 3.0 ports that are capable of transferring data at the Advertised Speeds. ASUS, however, deceptively failed to inform consumers that (i) the Purported USB 3.0 Laptops do not have USB 3.0 ports; and (ii) the USB ports of the Purported USB 3.0 Laptops are incapable of transferring data at the Advertised Speeds.

78.    Plaintiff and those similarly situated relied to their detriment on ASUS's false, misleading and deceptive advertising and marketing practices. Had Plaintiff and those similarly situated been adequately informed and not intentionally deceived by ASUS, they would have acted differently by, without limitation, paying less for the Purported USB 3.0 Laptops.

79.    ASUS's acts and omissions are likely to deceive the general public.

80.    ASUS engaged in these false, misleading and deceptive advertising and marketing practices to increase its profits. Accordingly, ASUS has engaged in

false advertising, as defined and prohibited by section 17500, et seq. of the California Business and Professions Code.

81.    The aforementioned practices, which ASUS as used, and continues to use, to its significant financial gain, also constitute unlawful competition and provide an unlawful advantage over ASUS's competitors as well as injury to the general public.

82.    Plaintiff seeks, on behalf of those similarly situated, full restitution of monies, as necessary and according to proof, to restore any and all monies acquired by ASUS from Plaintiff, the general public, or those similarly situated by means of the false, misleading and deceptive advertising and marketing practices complained of herein, plus interest thereon.

83.    Plaintiff seeks, on behalf of those similarly situated, an injunction to prohibit ASUS from continuing to engage in the false, misleading and deceptive advertising and marketing practices complained of herein. The acts complained of herein occurred, at least in part, within three (3) years preceding the filing of this Class Action Complaint.

84.    Plaintiff and those similarly situated are further entitled to and do seek both a declaration that the above-described practices constitute false, misleading and deceptive advertising, and injunctive relief restraining ASUS from engaging in any such advertising and marketing practices in the future. Such misconduct by ASUS, unless and until enjoined and restrained by order of this Court, will continue to cause injury in fact to the general public and the loss of money and property in that ASUS will continue to violate the laws of California, unless specifically ordered to comply with the same. This expectation of future violations will require current and future customers to repeatedly and continuously seek legal redress in order to recover monies paid to ASUS to which ASUS is not entitled. Plaintiff, those similarly situated and/or other consumers

nationwide have no other adequate remedy at law to ensure future compliance with the California Business and Professions Code alleged to have been violated herein.

85.    As a direct and proximate result of such actions, ASUS and the other members of the Class have suffered, and continue to suffer, injury in fact and have lost money and/or property as a result of such false, deceptive and misleading advertising in an amount which will be proven at trial, but which is in excess of the jurisdictional minimum of this Court.

**Plaintiff's Fourth Cause of Action**
**(Negligent Misrepresentation)**
**On Behalf of Himself and the Class**

86.    Plaintiff realleges and incorporates by reference the paragraphs of this Class Action Complaint as if set forth herein.

87.    In selling its Purported USB 3.0 Laptops to consumers, ASUS made false and misleading statements that the Purported USB 3.0 Laptops have USB 3.0 ports that are capable of transferring data at the Advertised Speeds. ASUS, however, deceptively failed to inform consumers that (i) the Purported USB 3.0 Laptops do not have USB 3.0 ports; and (ii) the USB ports of the Purported USB 3.0 Laptops are incapable of transferring data at the Advertised Speeds.

88.    These representations were material at the time they were made. They concerned material facts that were essential to the decision of Plaintiff and those similarly situated regarding how much to pay for the Purported USB 3.0 Laptops.

89.    ASUS made identical misrepresentations and omissions to members of the Class regarding the Purported USB 3.0 Laptops.

90.    ASUS should have known its representations to be false, and had no reasonable grounds for believing them to be true when they were made.

91.    By and through such negligent misrepresentations, ASUS intended to induce Plaintiff and those similarly situated to alter their position to their

detriment. Specifically, ASUS negligently induced Plaintiff and those similarly situated, without limitation, to purchase the Purported USB 3.0 Laptops at the price they paid.

92.    Plaintiff and those similarly situated reasonably relied on ASUS's representation. Specifically, Plaintiff and those similarly situated paid as much as they did for the Purported USB 3.0 Laptops, because ASUS had represented that the laptops have USB 3.0 ports that are capable of transferring data at the Advertised Speeds.

93.    Because they reasonably relied on ASUS's false representations, Plaintiff and those similarly situated were harmed in the amount of the price premium they paid (i.e., the difference between the price consumers paid for the Purported USB Laptops and the price they would have paid but for Defendant's misrepresentations), in an amount to be proven at trial using econometric or statistical techniques such as hedonic regression or conjoint analysis.

**Plaintiff's Fifth Cause of Action**
**(Unfair, Unlawful and Deceptive Trade Practices,**
**Business and Professions Code § 17200, et seq.)**
**On Behalf of Himself and the Class**

94.    Plaintiff realleges and incorporates by reference the paragraphs of this Class Action Complaint as if set forth herein.

95.    Within four (4) years preceding the filing of this Class Action Complaint, and at all times mentioned herein, ASUS has engaged, and continues to engage, in unfair, unlawful and deceptive trade practices in California by carrying out the unfair, deceptive and unlawful business practices outlined in this Class Action Complaint. In particular, ASUS has engaged, and continues to engage, in unfair, unlawful and deceptive trade practices by, without limitation, the following:

a.  falsely and deceptively representing to Plaintiff, and those similarly situated, that the Purported USB 3.0 Laptops have USB 3.0 ports that are capable of transferring data at the Advertised Speeds;

b.  failing to inform Plaintiff, and those similarly situated, that the Purported USB 3.0 Laptops do not have USB 3.0 ports, and that the laptops' USB ports are incapable of transferring data at the Advertised Speeds;

d.  engaging in misrepresentation as described herein;

e.  violating the CLRA as described herein; and

f.  violating the FAL as described herein.

96.    Plaintiff and those similarly situated relied to their detriment on ASUS's unfair, deceptive and unlawful business practices. Had Plaintiff and those similarly situated been adequately informed and not deceived by ASUS, they would have acted differently by, without limitation, paying less for the Purported USB 3.0 Laptops.

97.    ASUS's acts and omissions are likely to deceive the general public.

98.    ASUS engaged in these unfair practices to increase its profits. Accordingly, ASUS has engaged in unlawful trade practices, as defined and prohibited by section 17200, et seq. of the California Business and Professions Code.

99.    The aforementioned practices, which ASUS has used to its significant financial gain, also constitute unlawful competition and provides an unlawful advantage over ASUS's competitors as well as injury to the general public.

100.  As a direct and proximate result of such actions, Plaintiff and the other members of the Class have suffered and continue to suffer injury in fact and have lost money and/or property as a result of such deceptive, unfair and/or unlawful trade practices and unfair competition in an amount which will be proven at trial, but which is in excess of the jurisdictional minimum of this Court. Among other

things, Plaintiff and the class lost the amount of the price premium they paid (i.e., the difference between the price consumers paid for the Purported USB Laptops and the price they would have paid but for Defendant's misrepresentations), in an amount to be proven at trial using econometric or statistical techniques such as hedonic regression or conjoint analysis;

101.  Plaintiff seeks, on behalf of those similarly situated, a declaration that the above-described trade practices are fraudulent and unlawful.

102.  Plaintiff seeks, on behalf of those similarly situated, an injunction to prohibit ASUS from offering the Purported USB 3.0 Laptops within a reasonable time after entry of judgment, unless the ASUS modifies its website and other marketing materials to remove the misrepresentations and to disclose the omitted facts. Such misconduct by ASUS, unless and until enjoined and restrained by order of this Court, will continue to cause injury in fact to the general public and the loss of money and property in that Defendants will continue to violate the laws of California, unless specifically ordered to comply with the same. This expectation of future violations will require current and future consumers to repeatedly and continuously seek legal redress in order to recover monies paid to ASUS to which ASUS was not entitled. Plaintiff, those similarly situated and/or other consumers have no other adequate remedy at law to ensure future compliance with the California Business and Professions Code alleged to have been violated herein.

### Plaintiff's Sixth Cause of Action
### (Breach of Express Warranty)
### On Behalf of Himself and the Class

103.  Plaintiff realleges and incorporates by reference the paragraphs of this Complaint as if set forth herein.

104.  This cause of action is brought pursuant to California Commercial Code § 2100, et seq. as well as the common law.

105. Plaintiff, and those similarly situated, were "buyers" of goods as defined in California Commercial Code § 2103.

106. ASUS is a "seller" and "merchant" as those terms are defined in California Commercial Code §§ 2103 and 2104.

107. The terms of ASUS's Limited Warranty for hardware products such as the Purported USB 3.0 Laptops state that "ASUS warrants that the ASUS Hardware Products that you have purchased or leased from ASUS are free from defects in materials or workmanship under normal use during the Limited Warranty Period."

108. The SuperSpeed USB Trident Logo is an important marketing tool on laptop computers. It conveys a message to consumers that the USB port can achieve superior data transfer rates unavailable on devices without it. In particular, the USB Logo Usage Guidelines state: The USB Logo Usage Guidelines state: "The SuperSpeed USB Trident Logo is for use with product that signals at 5 Gbps.

109. ASUS's decision to utilize the SuperSpeed USB Trident logo on the Purported USB 3.0 Laptops is an affirmation to consumers that the associated ports are USB 3.0 compliant.

110. The following representations of ASUS were all factors in the decision of Plaintiff and those similarly situated to purchase the Purported USB 3.0 Laptop at the price they paid, and became part of the basis for the transaction: (i) representations on its website (e.g., in the product specifications) that the Purported USB 3.0 Laptop included USB 3.0 Ports; (ii) representations on its website that the Purported USB 3.0 Laptop had USB ports capable of transferring data at the Advertised Speeds; and (iii) representations on the laptop itself (i.e., the SuperSpeed USB Trident logo, printed next to USB ports on the laptop).

111.  Via each of these representations, ASUS affirmed that the Purported USB 3.0 Laptops met the USB 3.0 standards and, in doing so, expressly warranted them as such.

112.  As set forth above (*inter alia, see supra*, ¶¶ 12-26), the Purported USB 3.0 Laptops do not, in fact, meet the USB 3.0 requirements.

113.  ASUS breached these terms because the Purported USB 3.0 Laptops are defective in that the USB ports, under the laptops' normal user, are incapable of transferring data at the 5 gigabits per second speed required by the USB 3.0 Specification.

114.  ASUS's representations became part of the basis of the bargain in the purchases by Plaintiff, and those similarly situated, of ASUS's products, and thus qualify as "express warranties" as defined by section 2313 of the California Commercial Code in connection with the sale of goods to Plaintiff and those similarly situated.

115.  The defects in the Purported USB 3.0 Laptops were not apparent at the time of purchase, because ASUS (i) printed the USB Trident logo next to the USB ports on the Purported USB 3.0 Laptops; (ii) failed to disclose that the Purported USB 3.0 Laptops did not have USB 3.0 ports; and (iii) failed to disclose that the USB ports of the Purported USB 3.0 Laptops were incapable of transferring data at the 5 gigabits per second rate required by the USB 3.0 specification.

116.  As a result of ASUS's sale of the Purported USB 3.0 Laptops that do not perform as warranted and are unfit for normal use, Plaintiff, and those similarly situated, have suffered damages in the amount of the price premium paid (i.e., the difference between the price consumers paid for the Purported USB Laptops and the price they would have paid but for Defendant's misrepresentations), in an amount to be proven at trial using econometric or statistical techniques such as hedonic regression or conjoint analysis.

**Plaintiff's Seventh Cause of Action**
**(Violation of the Song-Beverly Consumer Warranty Act,**
**Civil Code §§ 1790, *et seq.*)**
**On Behalf of Himself and the Class**

117.    Plaintiff realleges and incorporates by reference the paragraphs of this
Complaint as if set forth herein.

118.    This cause of action is brought pursuant to the Song-Beverly Consumer
Warranty Act, California Civil Code §§ 1790, et seq. (the "Act").

119.    Plaintiff and those similarly situated were "buyers" of "consumer
goods" as those terms are defined under California Civil Code section 1791. The
Purported USB 3.0 Laptops sold to Plaintiff, and those similarly situated, are
"consumer goods" as defined in the Act.

120.    ASUS is a "manufacturer" as that term is defined in section 1791 of the
Act.

121.    An implied warranty of merchantability arose out of and was related to
ASUS's sale of the Purported USB 3.0 Laptops.

122.    ASUS breached the implied warranty of merchantability. The Purported
USB 3.0 Laptops purchased by Plaintiff and those similarly situated are not
merchantable because they would not pass without objection in the trade under
the contract description.

123.    As described in detail above (inter alia, see supra, ¶¶ 12-26), the
Purported USB 3.0 Laptops would not pass without objection in the trade as a
laptop computer with USB 3.0 ports compliant with the USB 3.0 specification. In
particular, the USB 3.0 Laptops are not capable of transferring data over USB
ports at the Advertised Speeds as represented by ASUS and provided in the
contract description. In fact, the USB ports of the Purported USB 3.0 Laptops
transfer data at rates that are far below the 5 gigabits per second speed required by
the USB 3.0 Specification. The ability to transfer data in accordance with the

USB 3.0 Specification is a critical feature for purchasers of laptops, particularly because the USB ports on laptops are frequently the only type of ports provided to allow the laptops to communicate with external storage devices.

124. Additionally, the Purported USB 3.0 Laptops are not merchantable because they do not conform to the promises or affirmations of fact made on the laptops themselves that they have USB 3.0 ports. ASUS made promises and affirmations of fact concerning the character and quality of the Purported USB 3.0 Laptops to Plaintiff and those similarly situated as a part of the contract of sale of the laptops.

125. Specifically, ASUS represented to Plaintiff and those similarly situated that the Purported USB 3.0 Laptops contained USB 3.0 ports capable of transferring data at the Advertised Speeds. ASUS provided specifications on its website stating that the Purported USB 3.0 Laptops contained USB 3.0 ports capable of transferring data at the Advertised Speeds. ASUS also represented that the Purported USB 3.0 Laptops had USB 3.0 ports by printing the USB Trident logo next to the USB ports on the Purported USB 3.0 Laptops

126. ASUS also made statements and representations to its agents, retailers of the Purported USB 3.0 Laptops, including online retailers (such as Newegg.com), and brick-and-mortar retailers, that the laptops contain USB 3.0 ports capable of transferring data at the Advertised Speeds. ASUS made these representations by providing retailers specifications of the Purported USB 3.0 Laptops, stating that the Purported USB 3.0 Laptops contain USB 3.0 ports capable of transferring data at the Advertised Speeds, and by printing the USB Trident logo next to the USB ports on the Purported USB 3.0 Laptops, which were displayed out of the package by brick-and-mortar retailers.

127.  ASUS made these representations to retailers with the intent that the retailers (such as Best Buy) would represent to Plaintiff, and others similarly situated, that the Purported USB 3.0 Laptops contain USB 3.0 ports.

128.  The retailers acted as ASUS's agent for purposes of providing ASUS's statements and representations to consumers such as Plaintiff.

129.  As a result of ASUS's sale of defective products that do not perform as warranted and are unfit for normal use, Plaintiff, and those similarly situated have suffered damages in the amount of the price premium paid (i.e., the difference between the price consumers paid for the Purported USB Laptops and the price they would have paid but for Defendant's misrepresentations), in an amount to be proven at trial using econometric or statistical techniques such as hedonic regression or conjoint analysis.

130.  Plaintiff, and those similarly situated, have suffered and will continue to suffer damages as a result of ASUS's failure to comply with its warranty obligations. Accordingly, Plaintiff, and those similarly situated, are entitled to recover such damages under the Song-Beverly Act, including damages pursuant to Civ. Code §§ 1791.1(d) and 1974.

131.  ASUS's breaches of warranty, as set forth above, were willful. Accordingly, a civil penalty should be imposed upon ASUS in an amount not to exceed twice the amount of actual damages.

### Prayer for Relief

WHEREFORE, Plaintiff prays for judgment as follows:

A.   On Cause of Action Number 1 against Defendant and in favor of Plaintiff and the other members of the Class:

1.   An award of compensatory damages in the amount of the price premium paid (i.e., the difference between the price consumers paid

for the Purported USB Laptops and the price they would have paid

but for Defendant's misrepresentations), in an amount to be proven

at trial using econometric or statistical techniques such as hedonic

regression or conjoint analysis; and

2.  An award of punitive damages, the amount of which is to be

    determined at trial.

B.  On Cause of Action Number 2 against Defendant and in favor of Plaintiff

    and the other members of the Class:

    1.  an award of actual damages, the amount of which is to be

    determined at trial;

    2.  for injunctive relief pursuant to, without limitation, the California

    Business & Professions Code §§ 17200, et seq. and 17500, et seq. and

    injunctive relief pursuant to California Civil Code section 1780;

    3.  an award of punitive damages, the amount of which is to be

    determined at trial; and

    4.  an award of statutory damages as provided by Civil Code section

    1780(b), the amount of which is to be determined at trial.

C.  On Causes of Action Numbers 3 and 5 against Defendant and in favor of

    Plaintiff and the other members of the Class:

    1.  For restitution of the price premium paid (i.e., the difference

        between the price consumers paid for the Purported USB Laptops

        and the price they would have paid but for Defendant's

        misrepresentations), in an amount to be proven at trial using

        econometric or statistical techniques such as hedonic regression or

        conjoint analysis, pursuant to, without limitation, the California

        Business & Professions Code §§ 17200, et seq. and 17500, et seq.;

and

2.   for declaratory and injunctive relief pursuant to, without limitation, the California Business & Professions Code §§ 17200, et seq. and 17500, et seq.

D.   On Cause of Action Number 4 against Defendant and in favor of Plaintiff and the other members of the Class:

1.   An award of compensatory damages, the amount of which is to be determined at trial; and

E.   On Cause of Action Numbers 6 and 7 against Defendant and in favor of Plaintiff and the other members of the Class:

1.   An award of compensatory damages, in the amount of the price premium paid (i.e., the difference between the price consumers paid for the Purported USB Laptops and the price they would have paid but for Defendant's misrepresentations), in an amount to be proven at trial using econometric or statistical techniques such as hedonic regression or conjoint analysis;

2.   An award of punitive damages, the amount of which is to be determined at trial; and

3.   An award of statutory damages according to proof.

**Jury Trial Demanded**

Plaintiff demands a trial by jury.

Respectfully submitted,

Dated: November 21, 2018        **GUTRIDE SAFIER LLP**

Seth A. Safier, Esq.
Seth A. Safier, Esq.
Todd Kennedy, Esq.
100 Pine Street, Suite 1250
San Francisco, California 94111
Telephone: (415) 789-6390
Facsimile: (415) 449-6469

Attorneys for Plaintiff

DocuSign Envelope ID: 89594C33-7AD5-4A24-BF83-FE85430BBEEB

## **EXHIBIT A**

I, Edward Brekhus, declare:

1.    I am the Plaintiff in this action. If called upon to testify, I could and would competently testify to the matters contained herein based upon my personal knowledge.

2.    I submit this Declaration pursuant to California Code of Civil Procedure section 2215.5 and California Civil Code section 1780(d).

3.    On November 29, 2015, I purchased an ASUS Laptop, X Series X555UB-NH51, on Newegg.com while I was located in San Francisco, California, where I resided at the time.

4.    I declare under penalty of perjury under the laws of California that the foregoing is true and correct.

Executed in San Francisco, California on 11/20/2018



DocuSigned by:
*Edward Brekhus*
1E612581401A434
Edward Brekhus

---

# EXHIBIT B

GUTRIDE SAFIER LLP

Adam J. Gutride (State Bar No. 181446)
    adam@gutridesafier.com
Seth A. Safier (State Bar No. 197427)
    seth@gutridesafier.com
Todd Kennedy (State Bar No. 250267)
    todd@gutridesafier.com
100 Pine Street, Suite 1250
San Francisco, California 94111
Telephone: (415) 789-6390
Facsimile:  (415) 449-6469

Attorneys for Plaintiff

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF SAN FRANCISCO

| | |
|---|---|
| EDWARD BREKHUS, an individual, on behalf of himself, the general public, and those similarly situated,<br><br>                    Plaintiff,<br><br>          v.<br><br>ASUS COMPUTER INTERNATIONAL; ASUSTEK COMPUTER, INC.<br><br>                    Defendants. | Case No. CGC-18-571553<br><br>Unlimited Civil Case<br><br>First Amended Class Action Complaint for Fraud, Deceit, and/or Misrepresentation; Violation of the Consumer Legal Remedies Act; False Advertising; Negligent Misrepresentation; Unfair, Unlawful, and Deceptive Trade Practices; Breach of Implied Warranty; and Violation of the Song-Beverly Consumer Warranty Act<br><br>Jury Trial Demanded |

1    Edward Brekhus, by and through his counsel, brings this First Amended

2    Class Action Complaint against Defendant, on behalf of himself, and those

3    similarly situated, for fraud, deceit, and/or misrepresentation; violation of the

4    Consumer Legal Remedies Act; false advertising; negligent misrepresentation;

5    unfair, unlawful, and deceptive trade practices; breach of express warranty; and

6    violation of the Song-Beverly Consumer Warranty Act. The following allegations

7    are based upon information and belief, including the investigation of Plaintiff's

8    counsel, unless stated otherwise.

9                                  **Introduction**

10    1.    This case concerns laptop computers that were marketed and sold by

11    ASUS as including Universal Serial Bus ("USB") 3.0 "Gen 1" ports (hereinafter

12    referred to as the "Purported USB 3.0 Laptops.") ASUS specifically marketed,

13    advertised and represented to consumers that the USB ports of the Purported USB

14    3.0 Laptops were capable of transferring data at rates of 5 gigabits (Gb) per

15    second.

16    2.    ASUS's representations are false. As Plaintiff discovered after

17    purchasing a Purported USB 3.0 Laptop advertised with a data transfer rate of

18    5Gb/s, the USB ports are incapable of transferring data at anywhere near the

19    speeds advertised. Rather, the USB ports are capable of transferring data at a rate

20    of only about 2,160 megabits/second—less than half as fast as advertised.

21    3.    In fact, the USB ports on the Purported USB 3.0 Laptops are not really

22    USB 3.0 ports. The USB 3.0 specification states that Gen 1 USB 3.0 hosts must

23    be capable of transferring data at a "SuperSpeed" rate of 5 gigabits/second. As

24    stated above, the USB ports of the Purported USB 3.0 Laptops—even when

25    operating at their highest speeds—only transfer data at less than half of the

26    required 5 gigabits/second rate.

**Parties**

4.    Edward Brekhus is, and at all times alleged in this Class Action Complaint was, an individual and a resident of California. Mr. Brekhus currently resides in San Francisco, California.

5.    Defendant ASUS Computer International is a corporation incorporated under the laws of the state of California, having its principal place of business in Fremont, California.

6.    Defendant ASUSTeK Computer Inc. ("ASUSTek") is a Taiwanese corporation with its headquarters at No. 15, Li-Te Road, Peitou, Taipei 112, Taiwan. ASUSTeK is the parent of ASUS Computer International.

7.    The Parties identified in paragraphs 5-6 of this Class Action Complaint are collectively referred to hereafter as "Defendant" or "ASUS".

8.    At all times herein mentioned, each Defendant was the agent, servant, representative, officer, director, partner or employee of the other Defendant and, in doing the things herein alleged, was acting within the scope and course of his/her/its authority as such agent, servant, representative, officer, director, partner or employee, and with the permission and consent of each of the other Defendant.

9.    At all times herein mentioned, each Defendant was a member of, and engaged in, a joint venture, partnership and common enterprise, and acting within the course and scope of, and in pursuance of, said joint venture, partnership and common enterprise.

10.    At all times herein mentioned, the acts and omissions of each Defendant concurred and contributed to the various acts and omissions of each and all of the other Defendant in proximately causing the injuries and damages as herein alleged.

11.    At all times herein mentioned, each Defendant ratified each and every act or omission complained of herein.

12.     At all times herein mentioned, each Defendant aided and abetted the acts and omissions of the other Defendant in proximately causing the damages, and other injuries, as herein alleged.

## Jurisdiction and Venue

13.     This action is brought by Plaintiff pursuant, inter alia, to the California Business and Professions Code, section 17200, et seq. Plaintiff and Defendant are "persons" within the meaning of the California Business and Professions Code, section 17201.

14.     The injuries, damages and/or harm upon which this action is based, occurred or arose out of activities engaged in by Defendants within, affecting, and emanating from, the State of California.

15.     Defendants have engaged, and continue to engage, in substantial and continuous business practices in the State of California, including in the City of San Francisco and County of San Francisco.

16.     In accordance with California Civil Code Section 1780(d), Plaintiff files herewith a declaration establishing that he purchased an ASUS laptop X Series X555UB-NH51computer on Newegg.com, while residing in San Francisco, California.

17.     Plaintiff is further informed and believes that the damages and restitution at issue in this action exceed, in the aggregated, $5 million.

18.     Plaintiff accordingly alleges that jurisdiction and venue are proper in this Court.

## Substantive Allegations

19.     The market for laptop computers is fiercely competitive. Laptop manufacturers continually attempt to gain market share by introducing the latest cutting-edge features that are attractive to consumers. One such feature is the

inclusion of one or more "USB 3.0" ports—data ports (otherwise known as "hosts")—that comply with Revision 3.0 of the USB specification.

**A. The USB Specification and its Data Transfer Rate Requirements**

20.    The USB specification was developed by a number of companies that collectively formed the USB Implementers Forum, Inc. ("Implementers Forum"), a non-profit corporation organized for the purposes of developing and distributing specifications and other documents that augment, enhance, or extend the USB specification.

21.    The Implementers Forum released the USB 1.0 specification in 1996. The USB 1.0 specification specified two data transmission modes: (i) "Low-Bandwidth" (providing 1.5 megabits/s); and (ii) "Full-Bandwidth" (providing 12 megabits/s).

22.    In April 2000, the Implementers Forum released the USB 2.0 specification, which added a third data transmission mode: "Hi-Speed" (providing 480 megabits/s).

23.    On November 12, 2008, the Implementers Forum released the USB 3.0 specification, which added a fourth data transmission mode: "SuperSpeed" (providing 5 gigabits/s). As described in the most recent version of the USB specification, "USB 3.0 was the USB community's response and provided users with the ability to move data at rates up to 450MB/s while retaining backward compatibility with USB 2.0." The term "SuperSpeed" is expressly defined by the USB 3.0 specification as being "USB operation at 5 Gbps":[1]

| Term/Abbreviation | Definition |
|---|---|
| SuperSpeed | USB operation at 5 Gbps. |

[1] "Mbit/s" refers to Megabits per second. A Megabit (which is different from a "Megabyte") is equivalent to 125 kilobytes.

### 3.1.4    USB 3.0 Architecture Summary

USB 3.0 is a dual-bus architecture that incorporates USB 2.0 and a SuperSpeed bus. Table 3-1 summarizes the key architectural differences between SuperSpeed USB and USB 2.0.

Table 3-1.  Comparing SuperSpeed to USB 2.0

| Characteristic | SuperSpeed USB | USB 2.0 |
|---|---|---|
| Data Rate | SuperSpeed (5.0 Gbps) | low-speed (1.5 Mbps), full-speed (12 Mbps), and high-speed (480 Mbps) |

24.    The USB 3.0 Specification refers to the USB ports of personal computers—like the laptop computers at issue here—as "hosts." Like all USB 3.0-compliant devices, hosts must be capable of transferring data at rates corresponding to all four data transfer modes, including SuperSpeed:



25.    The Implementers Forum owns the trademarks to a number of logos corresponding to USB. One such logo is the "SuperSpeed USB Trident" logo:



The USB Logo Usage Guidelines state: "The SuperSpeed USB Trident Logo is for use with product that signals at 5 Gbps" (i.e., 5 gigabits/second) (*Id.*) The Guidelines further state that the logo can be used only with a product "based on and compliant with the USB 3.0 and USB 3.0 Gen1 specifications." (*Id.*)

### B. ASUS's Purported USB 3.0 Laptops

26.    ASUS has marketed and sold dozens of laptop computers that purportedly have USB 3.0 ports.

27.    ASUS repeatedly represents on its website that the Purported USB 3.0 Laptops' USB 3.0 ports are ten times faster than USB 2.0 ports. That

representation, which Mr. Brekhus saw before purchasing the laptop and relied on in making his purchasing decision, is false. The USB 2.0 specification requires a transfer rate of 480 Mbit/s. Ten times that rate—4,800 Mbit/s—is not achievable by the ASUS USB 3.0 Laptops under any circumstances.

28.    ASUS also included various versions of the USB Trident Logo next to the USB ports of the Purported USB 3.0 Laptops. The following photograph is of the model plaintiff purchased:



Although the photograph above does not show it as clearly as would be seen by a consumer viewing an actual laptop, the SuperSpeed Trident Logo appears on the left side of each USB port above.

29.    As set forth below (*inter alia*, *see supra*, ¶¶ 34-46), Plaintiff saw these representations prior to making his purchase, and relied on them in making his purchase.

30.    ASUS sells the Purported USB 3.0 Laptops through various retailers, including both brick-and-mortar retailers and online retailers.

31.    To promote the sale of the Purported USB 3.0 Laptops, ASUS provides to all such retailers information relating to the laptops. ASUS represents to all its retailers that the Purported USB 3.0 Laptops have USB 3.0 ports that are ten times faster than USB 2.0 ports.

32.    ASUS makes these statements and representations to retailers with the knowledge and intent that the retailers will present this information to consumers.

33.    At no time did ASUS inform consumers or its retailers that the Purported USB 3.0 Laptops do not have USB 3.0 ports.

34.    At no time did ASUS inform consumers or its retailers that the USB ports of the Purported USB 3.0 Laptops are incapable of transferring data at the 5 gigabits/second rate required by the USB 3.0 specification, let alone the faster rates advertised by ASUS for some models of the Purported USB 3.0 Laptops.

**C. Plaintiff's Purchase of a Purported USB 3.0 Laptop and Discovery That It Lacks USB 3.0 Ports**

35.    In late 2015, Plaintiff was shopping for a new laptop. He was specifically looking for a highly portable laptop that could transfer data to and from external USB 3.0 storage devices. Plaintiff researched his options using a variety of resources available on the Internet, including ASUS's website.

36.    One of the laptops advertised on ASUS's website was the ASUS X Series X555UB-NH51. Plaintiff saw the representation on ASUS's website that the X Series had USB 3.0 ports, capable of transferring data ten times faster than USB 2.0 ports. Plaintiff also saw the product specifications on the website, stating that the laptop had two USB 3.0 ports.

37.    The inclusion of USB 3.0 ports, along with the advertised rapid transfer rate of these ports, was important to Plaintiff because he intended to access and transfer large files from external USB 3.0 storage devices.

38.    In reliance on Defendant's representations, Plaintiff purchased the X Series, in November 29, 2015, from Newegg.com.

39.    After purchasing and using the X Series, Plaintiff discovered that the laptop's purported USB 3.0 ports are incapable of achieving the 5.0 gigabits/second data transfer rates required by the USB 3.0 specification and advertised by ASUS.

40.    Plaintiff's investigator independently verified Plaintiff's discovery that the X Series' purported USB 3.0 ports transfer files at rates far below the USB 3.0 specification.

41.    In 2018, Plaintiff's investigator obtained the same model of laptop that plaintiff had purchased (i.e., the ASUS X Series X555UB-NH51), for the purposes of testing the transfer speed of the laptop's USB ports. The tests revealed that the transfer rate was, at best, only 2,160 megabits (i.e., 2.16 gigabits) per second. That rate is only about 43% as fast as the 5 gigabit/second speed required by the USB 3.0 specification and advertised by ASUS for the X Series.

42.    All tests described above were performed on the X Series as it existed after being taken out of the box. No other applications were running on the X Series when the tests were performed. No other hardware devices were connected to the X Series. Accordingly, the investigator's tests show how the X Series' purported USB 3.0 ports operate in the best-case scenario under normal use.

43.    Had Plaintiff known that the X Series' USB data transfer rates were so slow, or that they were not in compliance with the USB 3.0 specification, he would not have paid as much for the X Series.

44.    As a result of ASUS's misrepresentations, Plaintiff has sustained an out of pocket loss in, at a minimum, the difference in price between an X Series with the USB 3.0 specification and one with a USB 2.0 specification, which could be established using regression techniques such as hedonic regression to analyze market prices of various laptop computers with USB 3.0 and/or USB 2.0 ports and/or survey techniques such as conjoint analysis.

45.    Plaintiff intends to purchase ASUS products in the future and specifically wishes to purchase an ASUS computer with a USB 3.0 complaint port so that he can benefit from the higher transfer speeds.  He therefore is likely to be deceived again by any misrepresentations with respect to the USB capabilities of

such ASUS products. Plaintiff will be unable to determine whether such representations are false without purchasing and testing such ASUS products.

46.    Before ASUS released its Purported USB 3.0 Laptops, it tested the speed of their USB ports, and was aware of the transfer rates of which they were capable. ASUS—one of the world's largest manufacturers of consumer electronics—would not release a product without first testing each of its components.

47.    In addition, the USB Implementers Forum, of which ASUS is a board member, requires manufacturers to ensure that their devices actually conform with the USB 3.0 specification, which includes testing the speed of those devices. (*See, e.g.*, Ex. B at 1-2 ("Adopters [of the USB 3.0 specification] can demonstrate compliance with the specification through the testing program as defined by the USB Implementers Forum.") Accordingly, ASUS knew that the purported USB 3.0 ports were incapable of achieving speeds anywhere near the 5 gigabits/second speed that it advertised and that was required by the USB 3.0 specification.

**Class Allegations**

48.    In addition to his individual claims, Plaintiff brings this action as a class action pursuant to section 382 of the California Code of Civil Procedure and section 1781 of the California Civil Code on behalf of a Class consisting of all persons, natural or otherwise, who, while residing in the United States, purchased a Purported USB 3.0 Laptop between November 21, 2014 and the present.

49.    Excluded from the Class are ASUS, its affiliates, successors and assigns, officers and directors, and members of their immediate families.

50.    The proposed Class is so numerous that joinder of all members is impracticable. The precise number of members in the Class is not yet known to Plaintiff, but he estimates that it is well in excess of 500,000 people.

51.    There are questions of law and fact that are common to the Class, including, but not limited to, the following:

- whether the USB ports of the Purported USB 3.0 Laptops are capable of transferring data at the rates advertised by ASUS;

- whether the USB ports of the Purported USB 3.0 Laptops are capable of the data transfer speeds required by the USB 3.0 specification;

- whether ASUS misled class members by representing that the USB ports of the Purported USB 3.0 Laptops are capable of the data transfer speeds required by the USB 3.0 specification;

- whether ASUS misled class members by representing that the USB ports of the Purported USB 3.0 Laptops are capable of transferring data up to 10 times faster than the rates called for by the USB 2.0 specification;

- whether the USB Ports of the Purported USB 3.0 Laptops are actually USB 3.0 ports, as defined by the Implementers Forum's USB 3.0 Specification;

- whether ASUS breached its obligations to the class;

- whether ASUS engaged in the alleged conduct knowingly, recklessly, or negligently;

- the amount of revenues and profits ASUS received and/or the amount of monies or other obligations lost by class members as a result of such wrongdoing;

- whether class members are entitled to injunctive relief and other equitable relief and, if so, what is the nature of such relief; and

- whether class members are entitled to payment of actual, incidental, consequential, exemplary, and/or statutory damages plus interest, and if so, what is the nature of such relief.

52.    Plaintiff's claims against ASUS are typical of the claims of the Class because Plaintiff and all other members of the class purchased a Purported USB 3.0 Laptop with the same attendant advertising, warranties, and web-based representations and documentation. With respect to the class allegations, Plaintiff was subject to the exact same business practices and written representations.

53.   Plaintiff will fairly and adequately protect the interests of the Class.

54.   Plaintiff has demonstrated his commitment to the case, has diligently educated himself as to the issues involved, and to the best of his knowledge does not have any interests adverse to the proposed class.

55.   The questions of law and fact common to the members of the class predominate over any questions affecting only individual members.

56.   A class action is superior to other available methods for a fair and efficient adjudication of this controversy as many members of the proposed class have damages arising from ASUS's wrongful course of conduct which would not be susceptible to individualized litigation of this kind, including, but not limited to, the costs of experts and resources that may be required to examine the business practices in question.

57.   Given the relative size of damages sustained by the individual members of the Class, the diffuse impact of the damages, and homogeneity of the issues, the interests of members of the Class individually controlling the prosecution of separate actions is minimal.

58.   There is no litigation already commenced, nor is there anticipated to be subsequent litigation commenced by other members of the Class concerning ASUS's alleged conduct. Consequently, concerns with respect to the maintenance of a class action regarding the extent and nature of any litigation already commenced by members of the Class are non-existent.

59.   Plaintiff is unaware of any difficulties that are likely to be encountered in the management of this Class Action Complaint that would preclude its maintenance as a class action.

## CAUSES OF ACTION

### Plaintiff's First Cause of Action
**(Fraud, Deceit and/or Misrepresentation)**
**On Behalf of Himself and the Class**

60.    Plaintiff realleges and incorporates by reference all preceding paragraphs of this complaint as if fully set forth herein.

61.    As set forth above (*inter alia*, *see supra*, ¶¶ 25-33), ASUS represented to Plaintiff and those similarly situated that the Purported USB 3.0 Laptops include USB 3.0 ports. By engraving the SuperSpeed Trident Logo into the Purported USB 3.0 Laptops, ASUS also represented that the USB ports are "SuperSpeed" ports. Further, by claiming that the USB ports were "SuperSpeed" ports, ASUS represented that the ports could transfer data at the rate of 5 gigabits per second (i.e., the rate required by the USB 3.0 Specification). ASUS further represented that the USB 3.0 ports transfer data ten times faster than the 480 megabits per second rate required by the USB 2.0 specification (i.e., 4.8 gigabits per second). (As used herein, the term "Advertised Speeds" shall refer collectively to the 5.0 gigabits/second speed and the 4.8 gigabits/second speed advertised by ASUS.)

62.    ASUS further concealed, suppressed, and omitted material facts that would have revealed that the Purported USB 3.0 Laptops do not, in fact, have USB 3.0 ports or "SuperSpeed" ports, and that the USB ports of the Purported USB 3.0 Laptops are not, in fact, capable of transferring data at the Advertised Speeds.

63.    In addition, ASUS represented to all retailers of the Purported USB 3.0 Laptops, including online retailers (including Newegg.com), and brick-and-mortar retailers, that the Purported USB 3.0 Laptops include USB 3.0 "SuperSpeed" ports, and that the ports are capable of transferring data at the Advertised Speeds. ASUS made these representations by providing to such retailers specifications of

the Purported USB 3.0 Laptops, stating that the laptops have USB 3.0 ports capable of transferring data at the Advertised Speeds. ASUS further concealed, suppressed, and omitted material facts that would have revealed that the Purported USB 3.0 Laptops did not, in fact, contain USB 3.0 ports capable of transferring data at Advertised Speeds or the rates required by the USB 3.0 Specification.

64.    ASUS made these representations to retailers with the knowledge and intent that the retailers (such as Best Buy) would represent to Plaintiff, and others similarly situated, that the Purported USB 3.0 Laptops include USB 3.0 "SuperSpeed" ports capable of transferring data at the Advertised Speeds.

65.    ASUS's representations—both those made directly to consumers on ASUS's website and on the product, and those made indirectly to consumers through retailers—were false, and ASUS knew that the representations were false when it made them. In particular, as described above (*supra*, ¶¶ 46-46), ASUS tested the speed of its purported USB 3.0 ports, and confirmed that the ports were incapable of achieving the Advertised Speeds.

66.    ASUS's misrepresentations and omissions were material at the time they were made. They concerned material facts that were essential to the analysis undertaken by Plaintiff and those similarly situated as to whether to purchase the Purported USB 3.0 Laptops.

67.    Plaintiff and those similarly situated reasonably relied to their detriment on ASUS's representations—both those that ASUS made directly to them, and those that ASUS made indirectly to them through retailers. Specifically, Plaintiff and those similarly situated purchased Purported USB 3.0 Laptops because they believed that they had USB 3.0 ports, and that the ports were capable of achieving the Advertised Speeds. This reliance was reasonable because Plaintiff and those similarly situated could not test whether the laptops' USB ports were actually USB 3.0 ports prior to purchasing them.

68.    Had Plaintiff and those similarly situated been adequately informed and not intentionally deceived by ASUS, they would have acted differently by, without limitation, not purchasing (or paying less for) the Purported USB 3.0 Laptops.

69.    ASUS had a duty to inform members of the Class at the time of their purchase that the Purported USB 3.0 Laptops did not have USB 3.0 "SuperSpeed" ports; that the USB ports on the laptops were incapable of transferring data at the Advertised Speeds. In making its representations and omissions, ASUS breached its duty to class members. ASUS also gained financially from, and as a result of, its breach.

70.    By and through such fraud, deceit, misrepresentations and/or omissions, ASUS intended to induce Plaintiffs and those similarly situated to alter their position to their detriment. Specifically, ASUS fraudulently and deceptively induced Plaintiffs and those similarly situated to, without limitation, to purchase the Purported USB 3.0 Laptops.

71.    As a direct and proximate result of ASUS's misrepresentations and omissions, Plaintiffs and those similarly situated have suffered damages. In particular, Plaintiffs seek to recover on behalf of themselves and those similarly situated the amount of the price premium they paid (i.e., the difference between the price consumers paid for the Purported USB Laptops and the price they would have paid but for Defendant's misrepresentations), in an amount to be proven at trial using econometric or statistical techniques such as hedonic regression or conjoint analysis.

72.    ASUS's conduct as described herein was willful and malicious and was designed to maximize ASUS's profits even though ASUS knew that it would cause loss and harm to Plaintiffs and those similarly situated.

**Plaintiff's Second Cause of Action**
**(Violation of the Consumers Legal Remedies Act,**
**California Civil Code § 1750, et seq.)**
**On Behalf of Himself and the Class**

73. Plaintiff realleges and incorporates by reference the paragraphs of this Class Action Complaint as if set forth herein.

74. This cause of action is brought pursuant to the California Consumers Legal Remedies Act, California Civil Code § 1750, et seq. ("CLRA").

75. ASUS's actions, representations and conduct have violated, and continue to violate the CLRA, because they extend to transactions that are intended to result, or which have resulted, in the sale of goods to consumers.

76. Plaintiff and other members of the class are "consumers" as that term is defined by the CLRA in California Civil Code § 1761(d).

77. The products that Plaintiff and similarly situated members of the class purchased from ASUS are "goods" within the meaning of California Civil Code § 1761.

78. By engaging in the actions, representations, and conduct set forth in this Class Action Complaint, ASUS has violated, and continue to violate, §§ 1770(a)(2), 1770(a)(3), 1770(a)(4), 1770(a)(5), 1770(a)(7), and 1770(a)(9) of the CLRA. In violation of California Civil Code §1770(a)(2), ASUS misrepresented the approval or certification of goods. In violation of California Civil Code §1770(a)(3), ASUS misrepresented the certification by another. In violation of California Civil Code §1770(a)(4), ASUS used deceptive representations in connection with goods. In violation of California Civil Code §1770(a)(5), ASUS represented that goods have approval, characteristics, uses, benefits, and qualities that they do not have. In violation of California Civil Code §1770(a)(7), ASUS's acts and practices constitute improper representations that the goods and/or services it sells are of a particular standard, quality, or grade,

when they are of another. In violation of California Civil Code §1770(a)(9), ASUS advertised goods with intent not to sell them as advertised.

79.    Specifically, ASUS's acts and practices lead consumers to believe that the Purported USB 3.0 Laptops contain USB 3.0 "SuperSpeed" ports, and that the laptops' USB ports are capable of transferring data at the Advertised Speeds. To the contrary, the Purported USB 3.0 Laptops do not have USB 3.0 ports, and the laptops' USB ports are incapable of transferring data at the Advertised Speeds.

80.    Plaintiff requests that this Court enjoin ASUS from continuing to employ the unlawful methods, acts and practices alleged herein pursuant to California Civil Code § 1780(a)(2). If ASUS is not restrained from engaging in these types of practices in the future, Plaintiff and other members of the class will continue to suffer harm.

81.    CLRA § 1782 NOTICE. On or around March 26, 2018, Plaintiff, provided ASUS with notice and demand that within thirty (30) days from that date, ASUS correct, repair, replace or otherwise rectify the unlawful, unfair, false and/or deceptive practices complained of herein. ASUS failed to do so. Accordingly, Plaintiff seeks, pursuant to California Civil Code § 1780(a)(3), on behalf of himself and those similarly situated class members, compensatory damages, punitive damages and restitution of any ill-gotten gains due to Defendants' acts and practices.

82.    Plaintiff also requests that this Court award him costs and reasonable attorneys' fees pursuant to California Civil Code § 1780(d).

### Plaintiff's Third Cause of Action
**(False Advertising, Business and Professions Code § 17500, et seq. ("FAL"))**
**On Behalf of Himself and the Class**

83.    Plaintiff realleges and incorporates by reference the paragraphs of this Class Action Complaint as if set forth herein.

84.    Beginning at an exact date unknown to Plaintiff, but within three (3) years preceding the filing of the Class Action Complaint, ASUS has made untrue, false, deceptive and/or misleading statements in connection with the advertising and marketing of the Purported USB 3.0 Laptops.

85.    ASUS has made representations and statements (by omission and commission) that lead reasonable consumers to believe that the Purported USB 3.0 Laptops have USB 3.0 ports that are capable of transferring data at the Advertised Speeds. ASUS, however, deceptively failed to inform consumers that (i) the Purported USB 3.0 Laptops do not have USB 3.0 ports; and (ii) the USB ports of the Purported USB 3.0 Laptops are incapable of transferring data at the Advertised Speeds.

86.    Plaintiff and those similarly situated relied to their detriment on ASUS's false, misleading and deceptive advertising and marketing practices. Had Plaintiff and those similarly situated been adequately informed and not intentionally deceived by ASUS, they would have acted differently by, without limitation, paying less for the Purported USB 3.0 Laptops.

87.    ASUS's acts and omissions are likely to deceive the general public.

88.    ASUS engaged in these false, misleading and deceptive advertising and marketing practices to increase its profits. Accordingly, ASUS has engaged in false advertising, as defined and prohibited by section 17500, et seq. of the California Business and Professions Code.

89.    The aforementioned practices, which ASUS as used, and continues to use, to its significant financial gain, also constitute unlawful competition and provide an unlawful advantage over ASUS's competitors as well as injury to the general public.

90.    Plaintiff seeks, on behalf of those similarly situated, full restitution of monies, as necessary and according to proof, to restore any and all monies

acquired by ASUS from Plaintiff, the general public, or those similarly situated by means of the false, misleading and deceptive advertising and marketing practices complained of herein, plus interest thereon.

91.    Plaintiff seeks, on behalf of those similarly situated, an injunction to prohibit ASUS from continuing to engage in the false, misleading and deceptive advertising and marketing practices complained of herein. The acts complained of herein occurred, at least in part, within three (3) years preceding the filing of this Class Action Complaint.

92.    Plaintiff and those similarly situated are further entitled to and do seek both a declaration that the above-described practices constitute false, misleading and deceptive advertising, and injunctive relief restraining ASUS from engaging in any such advertising and marketing practices in the future. Such misconduct by ASUS, unless and until enjoined and restrained by order of this Court, will continue to cause injury in fact to the general public and the loss of money and property in that ASUS will continue to violate the laws of California, unless specifically ordered to comply with the same. This expectation of future violations will require current and future customers to repeatedly and continuously seek legal redress in order to recover monies paid to ASUS to which ASUS is not entitled. Plaintiff, those similarly situated and/or other consumers nationwide have no other adequate remedy at law to ensure future compliance with the California Business and Professions Code alleged to have been violated herein.

93.    As a direct and proximate result of such actions, ASUS and the other members of the Class have suffered, and continue to suffer, injury in fact and have lost money and/or property as a result of such false, deceptive and misleading advertising in an amount which will be proven at trial, but which is in excess of the jurisdictional minimum of this Court.

**Plaintiff's Fourth Cause of Action**
**(Negligent Misrepresentation)**
**On Behalf of Himself and the Class**

94.    Plaintiff realleges and incorporates by reference the paragraphs of this Class Action Complaint as if set forth herein.

95.    In selling its Purported USB 3.0 Laptops to consumers, ASUS made false and misleading statements that the Purported USB 3.0 Laptops have USB 3.0 ports that are capable of transferring data at the Advertised Speeds. ASUS, however, deceptively failed to inform consumers that (i) the Purported USB 3.0 Laptops do not have USB 3.0 ports; and (ii) the USB ports of the Purported USB 3.0 Laptops are incapable of transferring data at the Advertised Speeds.

96.    These representations were material at the time they were made. They concerned material facts that were essential to the decision of Plaintiff and those similarly situated regarding how much to pay for the Purported USB 3.0 Laptops.

97.    ASUS made identical misrepresentations and omissions to members of the Class regarding the Purported USB 3.0 Laptops.

98.    ASUS should have known its representations to be false, and had no reasonable grounds for believing them to be true when they were made.

99.    By and through such negligent misrepresentations, ASUS intended to induce Plaintiff and those similarly situated to alter their position to their detriment. Specifically, ASUS negligently induced Plaintiff and those similarly situated, without limitation, to purchase the Purported USB 3.0 Laptops at the price they paid.

100.   Plaintiff and those similarly situated reasonably relied on ASUS's representation. Specifically, Plaintiff and those similarly situated paid as much as they did for the Purported USB 3.0 Laptops, because ASUS had represented that the laptops have USB 3.0 ports that are capable of transferring data at the Advertised Speeds.

101.  Because they reasonably relied on ASUS's false representations, Plaintiff and those similarly situated were harmed in the amount of the price premium they paid (i.e., the difference between the price consumers paid for the Purported USB Laptops and the price they would have paid but for Defendant's misrepresentations), in an amount to be proven at trial using econometric or statistical techniques such as hedonic regression or conjoint analysis.

**Plaintiff's Fifth Cause of Action**
**(Unfair, Unlawful and Deceptive Trade Practices,**
**Business and Professions Code § 17200, et seq.)**
**On Behalf of Himself and the Class**

102.  Plaintiff realleges and incorporates by reference the paragraphs of this Class Action Complaint as if set forth herein.

103.  Within four (4) years preceding the filing of this Class Action Complaint, and at all times mentioned herein, ASUS has engaged, and continues to engage, in unfair, unlawful and deceptive trade practices in California by carrying out the unfair, deceptive and unlawful business practices outlined in this Class Action Complaint. In particular, ASUS has engaged, and continues to engage, in unfair, unlawful and deceptive trade practices by, without limitation, the following:

a.  falsely and deceptively representing to Plaintiff, and those similarly situated, that the Purported USB 3.0 Laptops have USB 3.0 ports that are capable of transferring data at the Advertised Speeds;

b.  failing to inform Plaintiff, and those similarly situated, that the Purported USB 3.0 Laptops do not have USB 3.0 ports, and that the laptops' USB ports are incapable of transferring data at the Advertised Speeds;

d.  engaging in misrepresentation as described herein;

e.  violating the CLRA as described herein; and

f.  violating the FAL as described herein.

104.   Plaintiff and those similarly situated relied to their detriment on ASUS's unfair, deceptive and unlawful business practices. Had Plaintiff and those similarly situated been adequately informed and not deceived by ASUS, they would have acted differently by, without limitation, paying less for the Purported USB 3.0 Laptops.

105.   ASUS's acts and omissions are likely to deceive the general public.

106.   ASUS engaged in these unfair practices to increase its profits. Accordingly, ASUS has engaged in unlawful trade practices, as defined and prohibited by section 17200, et seq. of the California Business and Professions Code.

107.   The aforementioned practices, which ASUS has used to its significant financial gain, also constitute unlawful competition and provides an unlawful advantage over ASUS's competitors as well as injury to the general public.

108.   As a direct and proximate result of such actions, Plaintiff and the other members of the Class have suffered and continue to suffer injury in fact and have lost money and/or property as a result of such deceptive, unfair and/or unlawful trade practices and unfair competition in an amount which will be proven at trial, but which is in excess of the jurisdictional minimum of this Court. Among other things, Plaintiff and the class lost the amount of the price premium they paid (i.e., the difference between the price consumers paid for the Purported USB Laptops and the price they would have paid but for Defendant's misrepresentations), in an amount to be proven at trial using econometric or statistical techniques such as hedonic regression or conjoint analysis;

109.   Plaintiff seeks, on behalf of those similarly situated, a declaration that the above-described trade practices are fraudulent and unlawful.

110.   Plaintiff seeks, on behalf of those similarly situated, an injunction to prohibit ASUS from offering the Purported USB 3.0 Laptops within a reasonable

time after entry of judgment, unless the ASUS modifies its website and other marketing materials to remove the misrepresentations and to disclose the omitted facts. Such misconduct by ASUS, unless and until enjoined and restrained by order of this Court, will continue to cause injury in fact to the general public and the loss of money and property in that Defendants will continue to violate the laws of California, unless specifically ordered to comply with the same. This expectation of future violations will require current and future consumers to repeatedly and continuously seek legal redress in order to recover monies paid to ASUS to which ASUS was not entitled. Plaintiff, those similarly situated and/or other consumers have no other adequate remedy at law to ensure future compliance with the California Business and Professions Code alleged to have been violated herein.

**Plaintiff's Sixth Cause of Action**
**(Breach of Express Warranty)**
**On Behalf of Himself and the Class**

111.  Plaintiff realleges and incorporates by reference the paragraphs of this Complaint as if set forth herein.

112.  This cause of action is brought pursuant to California Commercial Code § 2100, et seq. as well as the common law.

113.  Plaintiff, and those similarly situated, were "buyers" of goods as defined in California Commercial Code § 2103.

114.  ASUS is a "seller" and "merchant" as those terms are defined in California Commercial Code §§ 2103 and 2104.

115.  The terms of ASUS's Limited Warranty for hardware products such as the Purported USB 3.0 Laptops state that "ASUS warrants that the ASUS Hardware Products that you have purchased or leased from ASUS are free from defects in materials or workmanship under normal use during the Limited Warranty Period."

116.    The SuperSpeed USB Trident Logo is an important marketing tool on laptop computers. It conveys a message to consumers that the USB port can achieve superior data transfer rates unavailable on devices without it. In particular, the USB Logo Usage Guidelines state: The USB Logo Usage Guidelines state: "The SuperSpeed USB Trident Logo is for use with product that signals at 5 Gbps.

117.    ASUS's decision to utilize the SuperSpeed USB Trident logo on the Purported USB 3.0 Laptops is an affirmation to consumers that the associated ports are USB 3.0 compliant.

118.    The following representations of ASUS were all factors in the decision of Plaintiff and those similarly situated to purchase the Purported USB 3.0 Laptop at the price they paid, and became part of the basis for the transaction: (i) representations on its website (e.g., in the product specifications) that the Purported USB 3.0 Laptop included USB 3.0 Ports; (ii) representations on its website that the Purported USB 3.0 Laptop had USB ports capable of transferring data at the Advertised Speeds; and (iii) representations on the laptop itself (i.e., the SuperSpeed USB Trident logo, printed next to USB ports on the laptop).

119.    Via each of these representations, ASUS affirmed that the Purported USB 3.0 Laptops met the USB 3.0 standards and, in doing so, expressly warranted them as such.

120.    As set forth above (*inter alia*, *see supra*, ¶¶ 20-34, the Purported USB 3.0 Laptops do not, in fact, meet the USB 3.0 requirements.

121.    ASUS breached these terms because the Purported USB 3.0 Laptops are defective in that the USB ports, under the laptops' normal user, are incapable of transferring data at the 5 gigabits per second speed required by the USB 3.0 Specification.

122.   ASUS's representations became part of the basis of the bargain in the purchases by Plaintiff, and those similarly situated, of ASUS's products, and thus qualify as "express warranties" as defined by section 2313 of the California Commercial Code in connection with the sale of goods to Plaintiff and those similarly situated.

123.   The defects in the Purported USB 3.0 Laptops were not apparent at the time of purchase, because ASUS (i) printed the USB Trident logo next to the USB ports on the Purported USB 3.0 Laptops; (ii) failed to disclose that the Purported USB 3.0 Laptops did not have USB 3.0 ports; and (iii) failed to disclose that the USB ports of the Purported USB 3.0 Laptops were incapable of transferring data at the 5 gigabits per second rate required by the USB 3.0 specification.

124.   As a result of ASUS's sale of the Purported USB 3.0 Laptops that do not perform as warranted and are unfit for normal use, Plaintiff, and those similarly situated, have suffered damages in the amount of the price premium paid (i.e., the difference between the price consumers paid for the Purported USB Laptops and the price they would have paid but for Defendant's misrepresentations), in an amount to be proven at trial using econometric or statistical techniques such as hedonic regression or conjoint analysis.

**Plaintiff's Seventh Cause of Action**
**(Violation of the Song-Beverly Consumer Warranty Act,**
**Civil Code §§ 1790, *et seq.*)**
**On Behalf of Himself and the Class**

125.   Plaintiff realleges and incorporates by reference the paragraphs of this Complaint as if set forth herein.

126.   This cause of action is brought pursuant to the Song-Beverly Consumer Warranty Act, California Civil Code §§ 1790, et seq. (the "Act").

127.   Plaintiff and those similarly situated were "buyers" of "consumer goods" as those terms are defined under California Civil Code section 1791. The

Purported USB 3.0 Laptops sold to Plaintiff, and those similarly situated, are "consumer goods" as defined in the Act.

128.   ASUS is a "manufacturer" as that term is defined in section 1791 of the Act.

129.   An implied warranty of merchantability arose out of and was related to ASUS's sale of the Purported USB 3.0 Laptops.

130.   ASUS breached the implied warranty of merchantability. The Purported USB 3.0 Laptops purchased by Plaintiff and those similarly situated are not merchantable because they would not pass without objection in the trade under the contract description.

131.   As described in detail above (inter alia, see supra, ¶¶ 20-33), the Purported USB 3.0 Laptops would not pass without objection in the trade as a laptop computer with USB 3.0 ports compliant with the USB 3.0 specification. In particular, the USB 3.0 Laptops are not capable of transferring data over USB ports at the Advertised Speeds as represented by ASUS and provided in the contract description. In fact, the USB ports of the Purported USB 3.0 Laptops transfer data at rates that are far below the 5 gigabits per second speed required by the USB 3.0 Specification. The ability to transfer data in accordance with the USB 3.0 Specification is a critical feature for purchasers of laptops, particularly because the USB ports on laptops are frequently the only type of ports provided to allow the laptops to communicate with external storage devices.

132.   Additionally, the Purported USB 3.0 Laptops are not merchantable because they do not conform to the promises or affirmations of fact made on the laptops themselves that they have USB 3.0 ports. ASUS made promises and affirmations of fact concerning the character and quality of the Purported USB 3.0 Laptops to Plaintiff and those similarly situated as a part of the contract of sale of the laptops.

133.   Specifically, ASUS represented to Plaintiff and those similarly situated that the Purported USB 3.0 Laptops contained USB 3.0 ports capable of transferring data at the Advertised Speeds. ASUS provided specifications on its website stating that the Purported USB 3.0 Laptops contained USB 3.0 ports capable of transferring data at the Advertised Speeds. ASUS also represented that the Purported USB 3.0 Laptops had USB 3.0 ports by printing the USB Trident logo next to the USB ports on the Purported USB 3.0 Laptops

134.   ASUS also made statements and representations to its agents, retailers of the Purported USB 3.0 Laptops, including online retailers (such as Newegg.com), and brick-and-mortar retailers, that the laptops contain USB 3.0 ports capable of transferring data at the Advertised Speeds. ASUS made these representations by providing retailers specifications of the Purported USB 3.0 Laptops, stating that the Purported USB 3.0 Laptops contain USB 3.0 ports capable of transferring data at the Advertised Speeds, and by printing the USB Trident logo next to the USB ports on the Purported USB 3.0 Laptops, which were displayed out of the package by brick-and-mortar retailers.

135.   ASUS made these representations to retailers with the intent that the retailers (such as Best Buy) would represent to Plaintiff, and others similarly situated, that the Purported USB 3.0 Laptops contain USB 3.0 ports.

136.   The retailers acted as ASUS's agent for purposes of providing ASUS's statements and representations to consumers such as Plaintiff.

137.   As a result of ASUS's sale of defective products that do not perform as warranted and are unfit for normal use, Plaintiff, and those similarly situated have suffered damages in the amount of the price premium paid (i.e., the difference between the price consumers paid for the Purported USB Laptops and the price they would have paid but for Defendant's misrepresentations), in an amount to be

proven at trial using econometric or statistical techniques such as hedonic regression or conjoint analysis.

138.   Plaintiff, and those similarly situated, have suffered and will continue to suffer damages as a result of ASUS's failure to comply with its warranty obligations. Accordingly, Plaintiff, and those similarly situated, are entitled to recover such damages under the Song-Beverly Act, including damages pursuant to Civ. Code §§ 1791.1(d) and 1974.

139.   ASUS's breaches of warranty, as set forth above, were willful. Accordingly, a civil penalty should be imposed upon ASUS in an amount not to exceed twice the amount of actual damages.

**Prayer for Relief**

WHEREFORE, Plaintiff prays for judgment as follows:

A.  On Cause of Action Number 1 against Defendant and in favor of Plaintiff and the other members of the Class:

    1.  An award of compensatory damages in the amount of the price premium paid (i.e., the difference between the price consumers paid for the Purported USB Laptops and the price they would have paid but for Defendant's misrepresentations), in an amount to be proven at trial using econometric or statistical techniques such as hedonic regression or conjoint analysis; and

    2.  An award of punitive damages, the amount of which is to be determined at trial.

B.  On Cause of Action Number 2 against Defendant and in favor of Plaintiff and the other members of the Class:

    1.  an award of actual damages, the amount of which is to be determined at trial;

    2.  for injunctive relief pursuant to, without limitation, the California Business & Professions Code §§ 17200, et seq. and 17500, et seq. and injunctive relief pursuant to California Civil Code section 1780;

    3.  an award of punitive damages, the amount of which is to be determined at trial; and

    4.  an award of statutory damages as provided by Civil Code section 1780(b), the amount of which is to be determined at trial.

C.  On Causes of Action Numbers 3 and 5 against Defendant and in favor of Plaintiff and the other members of the Class:

    1.  For restitution of the price premium paid (i.e., the difference

between the price consumers paid for the Purported USB Laptops and the price they would have paid but for Defendant's misrepresentations), in an amount to be proven at trial using econometric or statistical techniques such as hedonic regression or conjoint analysis, pursuant to, without limitation, the California Business & Professions Code §§ 17200, et seq. and 17500, et seq.; and

2.    for declaratory and injunctive relief pursuant to, without limitation, the California Business & Professions Code §§ 17200, et seq. and 17500, et seq.

D.    On Cause of Action Number 4 against Defendant and in favor of Plaintiff and the other members of the Class:

1.    An award of compensatory damages, the amount of which is to be determined at trial; and

E.    On Cause of Action Numbers 6 and 7 against Defendant and in favor of Plaintiff and the other members of the Class:

1.    An award of compensatory damages, in the amount of the price premium paid (i.e., the difference between the price consumers paid for the Purported USB Laptops and the price they would have paid but for Defendant's misrepresentations), in an amount to be proven at trial using econometric or statistical techniques such as hedonic regression or conjoint analysis;

2.    An award of punitive damages, the amount of which is to be determined at trial; and

3.    An award of statutory damages according to proof.

**Jury Trial Demanded**

1    Plaintiff demands a trial by jury.

2                              Respectfully submitted,

3    Dated: April 26, 2019        **GUTRIDE SAFIER LLP**

4

5

6

7                              Seth A. Safier, Esq.
                               Todd Kennedy, Esq.
8                              100 Pine Street, Suite 1250
                               San Francisco, California 94111
9                              Telephone: (415) 789-6390
                               Facsimile: (415) 449-6469
10

11                             Attorneys for Plaintiff

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

**CERTIFICATE OF SERVICE**

I, Seth A. Safier, Esq., declare under penalty of perjury under the laws of the State of California that the following is true and correct:

I am a member of the bar of this court. I am a resident of the United States, over the age of eighteen (18) years, and not a party to or interested in the within-entitled action.

I caused to be served the following documents:

**PLAINTIFF'S FIRST AMENDED CLASS ACTION COMPLAINT**

on the following person(s) by placing a true copy thereof as follows:

[x]    BY E-FILE/EMAIL. I caused said documents to be transmitted to Defendants' counsel electronically via File&ServeExpress.

Luanne Sacks
Michele Floyd
Robert Bader
Sacks, Ricketts & Case, LLP
177 Post Street, Suite 650
San Francisco, CA 94108
mfloyd@srclaw.com
lsacks@srclaw.com
rbader@srclaw.com

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Dated: April 26, 2019

_____
Seth Safier, Esq.

# EXHIBIT C

Contact Us

## THE SUPERIOR COURT OF CALIFORNIA
## COUNTY OF SAN FRANCISCO

**Case Number: CGC18571553**
**Title: EDWARD BREKHUS VS. ASUS COMPUTER INTERNATIONAL**
**Cause of Action: BUSINESS TORT**
Generated: 2019-04-29 10:03 am

Register of Actions    Parties    Attorneys    Calendar    Payments    Documents

**Please Note: The "View" document links on this web page are valid until 10:13:36 am**
**After that, please refresh your web browser. (by pressing Command +R for Mac, pressing F5 for Windows or clicking the refresh button on your web browser)**

# Register of Actions

Show 10 ▼ entries                                                          Search:

| Date | Proceedings | Document | Fee |
|------|-------------|----------|-----|
| 2019-04-12 | CASE MANAGEMENT CONFERENCE OF MAY-01-2019 CONTINUED TO JUN-05-2019 AT 10:30 AM IN DEPARTMENT 610. NOTICE SENT BY COURT. | View | |
| 2019-01-30 | ORDER - STIPULATION AND ORDER EXTENDING DEFENDANT'S TIME TO RESPOND TO COMPLAINT TO APR-26-2019 | View | |
| 2019-01-24 | PROOF OF SERVICE OF FEE PAID FOR STIPULATION AND [PROPOSED] ORDER EXTENDING DEFENDANTS TIME TO RESPOND TO COMPLAINT PENDING PRIVATE MEDIATION (TRANSACTION ID # 62896621) FILED BY DEFENDANT ASUS COMPUTER INTERNATIONAL | View | |
| 2019-01-24 | FEE PAID FOR STIPULATION AND [PROPOSED] ORDER EXTENDING DEFENDANTS TIME TO RESPOND TO COMPLAINT PENDING PRIVATE MEDIATION (TRANSACTION ID # 62896621) FILED BY DEFENDANT ASUS COMPUTER INTERNATIONAL | | $20.00 |
| 2019-01-22 | ORDER - STIPULATION AND ORDER EXTENDING TIME FOR DEFENDANT ASUS COMPUTER INTERNATIONAL TO RESPOND TO JAN-28-2019 | View | |
| 2019-01-17 | PROOF OF SERVICE (TRANSACTION ID # 62876537) FILED BY DEFENDANT ASUS COMPUTER INTERNATIONAL | View | |
| 2019-01-17 | FEE PAID ON STIPULATION AND [PROPOSED] ORDER EXTENDING TIME FOR DEFENDANT ASUS COMPUTER INTERNATIONAL TO RESPOND TO PLAINTIFF EDWARD BREKHUS COMPLAINT (TRANSACTION ID # 62876537) FILED BY DEFENDANT ASUS COMPUTER INTERNATIONAL | | $20.00 |
| 2018-12-13 | PROOF OF SERVICE (TRANSACTION ID # 100056551) FILED BY DEFENDANT ASUS COMPUTER INTERNATIONAL | View | |
| 2018-12-13 | CIVIL CASE COVER SHEET - COUNTER-COMPLEX CASE DESIGNATION (TRANSACTION ID # 100056551) FILED BY DEFENDANT ASUS COMPUTER INTERNATIONAL | View | $1450.00 |
| 2018-11-26 | NOTICE TO PLAINTIFF | View | |

Showing 1 to 10 of 11 entries                          Previous    1    2    Next

Contact Us

THE SUPERIOR COURT OF CALIFORNIA
COUNTY OF SAN FRANCISCO

**Case Number: CGC18571553**
**Title: EDWARD BREKHUS VS. ASUS COMPUTER INTERNATIONAL**
**Cause of Action: BUSINESS TORT**
Generated: 2019-04-29 10:03 am

Register of Actions     Parties     Attorneys     Calendar     Payments     Documents

**Please Note: The "View" document links on this web page are valid until 10:13:36 am**
**After that, please refresh your web browser. (by pressing Command +R for Mac, pressing F5 for Windows or clicking the refresh button on your web browser)**

# Register of Actions

Show 10 ▼ entries                                                                                                          Search:

| Date | Proceedings | Document | Fee |
|------|-------------|----------|-----|
| 2018-11-26 | BUSINESS TORT, COMPLAINT FILED BY PLAINTIFF BREKHUS, EDWARD AN INDIVIDUAL ON BEHALF OF HIMSELF, THE GENERAL PUBLIC, AND THOSE SIMILARLY SITUATED AS TO DEFENDANT ASUS COMPUTER INTERNATIONAL SUMMONS ISSUED, JUDICIAL COUNCIL CIVIL CASE COVER SHEET FILED CASE MANAGEMENT CONFERENCE SCHEDULED FOR MAY-01-2019 PROOF OF SERVICE DUE ON JAN-25-2019 CASE MANAGEMENT STATEMENT DUE ON APR-08-2019 | View | $450.00 |

Showing 11 to 11 of 11 entries                                                                  Previous    1    2    Next

## NOTICE TO PLAINTIFF

A Case Management Conference is set for:

**DATE:**   **MAY-01-2019**

**TIME:**   **10:30AM**

**PLACE:**   **Department 610**
**400 McAllister Street**
**San Francisco, CA  94102-3680**

All parties must appear and comply with Local Rule 3.

CRC 3.725 requires the filing and service of a case management statement form CM-110
no later than 15 days before the case management conference.  However, it would facilitate
the issuance of a case management order **without an appearance** at the case
management conference if the case management statement is filed, served and lodged in
Department 610 twenty-five (25) days before the case management conference.

Plaintiff must serve a copy of this notice upon each party to this action with the summons and
complaint. Proof of service subsequently filed with this court shall so state.   **This case is
eligible for electronic filing and service per Local Rule 2.11.  For more information,
please visit the Court's website at www.sfsuperiorcourt.org under Online Services.**

**[DEFENDANTS: Attending the Case Management Conference does not take the place
of filing a written response to the complaint. You must file a written response with the
court within the time limit required by law. See Summons.]**

### ALTERNATIVE DISPUTE RESOLUTION REQUIREMENTS

**IT IS THE POLICY OF THE SUPERIOR COURT THAT EVERY CIVIL CASE SHOULD PARTICIPATE IN
MEDIATION, ARBITRATION, NEUTRAL EVALUATION,  AN EARLY SETTLEMENT CONFERENCE, OR
OTHER APPROPRIATE FORM OF ALTERNATIVE DISPUTE RESOLUTION PRIOR TO A TRIAL.**

 (SEE LOCAL RULE 4)

Plaintiff  **must**  serve a copy of the Alternative Dispute Resolution (ADR) Information Package
on each defendant along with the complaint.  (CRC 3.221.) The ADR package may be
accessed at www.sfsuperiorcourt.org/divisions/civil/dispute-resolution or you may request a
paper copy from the filing clerk.  All counsel must discuss ADR with clients and opposing
counsel and provide clients with a copy of the ADR Information Package prior to filing
the Case Management Statement.

**Superior Court Alternative Dispute Resolution Administrator**
**400  McAllister Street, Room 103-A**
**San Francisco, CA  94102**
**(415) 551-3869**

**See Local Rules 3.3, 6.0 C and 10 B re stipulation to judge pro tem.**

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| Luanne Sacks (SBN 120811); Michele Floyd (SBN 163031); Robert B. Bader (SBN 233165); Jacqueline Young (SBN 280374) Sacks, Ricketts & Case LLP 177 Post Street, Suite 650, San Francisco, CA 94108 | ELECTRONICALLY **FILED** *Superior Court of California, County of San Francisco* **12/13/2018 Clerk of the Court** BY:JUDITH NUNEZ **Deputy Clerk** |

TELEPHONE NO.: 415.549.0580    FAX NO.: 415.549.0640
ATTORNEY FOR *(Name):* ASUS Computer International

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF** San Francisco
STREET ADDRESS: 400 McAllister Street
MAILING ADDRESS:
CITY AND ZIP CODE: San Francisco, CA 94102
BRANCH NAME: Civic Center Courthouse

CASE NAME:
Edward Brekhus v. ASUS Computer International

| **CIVIL CASE COVER SHEET** | | **Complex Case Designation** | CASE NUMBER: CGC-18-571553 |
|---|---|---|---|
| ✓ **Unlimited** (Amount demanded exceeds $25,000) | ☐ **Limited** (Amount demanded is $25,000 or less) | ✓ **Counter**   ☐ **Joinder** Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | JUDGE: DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
☐ Auto (22)
☐ Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
☐ Asbestos (04)
☐ Product liability (24)
☐ Medical malpractice (45)
☐ Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
✓ Business tort/unfair business practice (07)
☐ Civil rights (08)
☐ Defamation (13)
☐ Fraud (16)
☐ Intellectual property (19)
☐ Professional negligence (25)
☐ Other non-PI/PD/WD tort (35)

**Employment**
☐ Wrongful termination (36)
☐ Other employment (15)

**Contract**
☐ Breach of contract/warranty (06)
☐ Rule 3.740 collections (09)
☐ Other collections (09)
☐ Insurance coverage (18)
☐ Other contract (37)

**Real Property**
☐ Eminent domain/Inverse condemnation (14)
☐ Wrongful eviction (33)
☐ Other real property (26)

**Unlawful Detainer**
☐ Commercial (31)
☐ Residential (32)
☐ Drugs (38)

**Judicial Review**
☐ Asset forfeiture (05)
☐ Petition re: arbitration award (11)
☐ Writ of mandate (02)
☐ Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
☐ Antitrust/Trade regulation (03)
☐ Construction defect (10)
☐ Mass tort (40)
☐ Securities litigation (28)
☐ Environmental/Toxic tort (30)
☐ Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
☐ Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
☐ RICO (27)
☐ Other complaint *(not specified above)* (42)

**Miscellaneous Civil Petition**
☐ Partnership and corporate governance (21)
☐ Other petition *(not specified above)* (43)

2. This case ✓ is   ☐ is not   complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. ☐ Large number of separately represented parties    d. ☐ Large number of witnesses
   b. ✓ Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve    e. ☐ Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   c. ☐ Substantial amount of documentary evidence    f. ☐ Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a. ✓ monetary   b. ✓ nonmonetary; declaratory or injunctive relief   c. ✓ punitive
4. Number of causes of action *(specify):* Seven (7)
5. This case ✓ is   ☐ is not   a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: 12.13.18
Robert B. Bader
_____
(TYPE OR PRINT NAME)                     ▶                     (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on **all** other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. July 1, 2007]   **CIVIL CASE COVER SHEET**   Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10
www.courtinfo.ca.gov

1  Luanne Sacks (SBN 120811)
   lsacks@srclaw.com
2  Michele Floyd (SBN 163031)
   mfloyd@srclaw.com
3  Robert B. Bader (SBN 233165)
   rbader@srclaw.com
4  Jacqueline Young (SBN 280374)
   jyoung@srclaw.com
5  SACKS, RICKETTS & CASE LLP
   177 Post Street, Suite 650
6  San Francisco, CA 94108
   Telephone: 415-549-0580
7  Facsimile: 415-549-0640

8  Attorneys for Defendant
   ASUS COMPUTER INTERNATIONAL
9

ELECTRONICALLY
F I L E D
Superior Court of California,
County of San Francisco
12/13/2018
Clerk of the Court
BY:JUDITH NUNEZ
Deputy Clerk

10              **SUPERIOR COURT FOR THE STATE OF CALIFORNIA**

11                      **COUNTY OF SAN FRANCISCO**

12  EDWARD BREKHUS, an individual, on behalf       CASE NO. CGC-18-571553
    of himself, the general public, and those
13  similarly situated,                            **PROOF OF SERVICE**

14                  Plaintiff,

15  v.

16  ASUS COMPUTER INTERNATIONAL,

17                  Defendants.

18

19

20

21

22

23

24

25

26

27

28

1

**PROOF OF SERVICE**

2

STATE OF CALIFORNIA, COUNTY OF SAN FRANCISCO

3

4

    I am employed in the County of San Francisco, State of California. I am over 18 years of age and am not a party to the within action. My business address is 177 Post Street, Suite 650, San Francisco, CA 94108.

5

    On December 13, 2018 I served the foregoing document described as:

6

7

**DEFENDANT ASUS COMPUTER INTERNATIONAL'S COUNTER COMPLEX CASE DESIGNATION**

8

on the following interested parties to this cause as follows:

9

**Attorneys for Plaintiff Edward Brekhus**

10

11

12

13

14

Adam J. Gutride
Seth A. Safier
Marie A. McCrary
Anthony Patek
GUTRIDE SAFIER LLP
100 Pine Street, Suite 1250
San Francisco, CA 94111

15

METHOD OF SERVICE

16

17

18

19

    ☒   MAIL: I placed the above document(s) in a sealed envelope and deposited such envelope(s) in the mail at San Francisco. The envelope(s) was/were mailed with postage thereon fully prepaid. I am readily familiar with the firm's practice of collection and processing of mail, which would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid at San Francisco, California, in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation or meter date is more than one business day after date of deposit for mailing in affidavit.

20

21

    ☐ PERSONAL SERVICE: I caused such envelope(s) to be delivered by hand to the above addressee(s).

22

23

    ☐ OVERNIGHT COURIER: I sent such document(s) on December 13, 2018 with postage thereon fully prepaid at San Francisco, California.

24

    I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

25

    Executed on December 13, 2018 at San Francisco, California.

26

27

28

_____
Jessica Talavera-Rauh

1

Luanne Sacks (SBN 120811)
lsacks@srclaw.com
Michele Floyd (SBN 163031)
mfloyd@srclaw.com
Robert B. Bader (SBN 233165)
rbader@srclaw.com
Jacqueline Young (SBN 280374)
jyoung@srclaw.com
SACKS, RICKETTS & CASE LLP
177 Post Street, Suite 650
San Francisco, CA 94108
Telephone: 415-549-0580
Facsimile: 415-549-0640

Attorneys for Defendant
ASUS COMPUTER INTERNATIONAL

**SUPERIOR COURT FOR THE STATE OF CALIFORNIA**

**COUNTY OF SAN FRANCISCO**

| | |
|---|---|
| EDWARD BREKHUS, an individual, on behalf of himself, the general public, and those similarly situated,<br><br>        Plaintiff,<br><br>v.<br><br>ASUS COMPUTER INTERNATIONAL,<br><br>        Defendants. | CASE NO. CGC-18-571553<br><br>**STIPULATION AND [PROPOSED] ORDER EXTENDING TIME FOR DEFENDANT ASUS COMPUTER INTERNATIONAL TO RESPOND TO PLAINTIFF EDWARD BREKHUS' COMPLAINT** |

.

1

**STIPULATION**

2      Plaintiff Edward Brekhus ("Brekhus") and Defendant Asus Computer International

3  ("ACI") (collectively, the "Parties"), through their undersigned counsel, hereby stipulate and agree

4  as follows:

5      1.      On November 26, 2018, Brekhus filed his Complaint in this action.  The Complaint

6  and Summons were served on ACI pursuant to California Code of Civil Procedure section 415.10

7  on November 28, 2018.

8      2.      Pursuant to California Rule of Court 3.110(d), the Parties agreed to a 15-day

9  extension for ACI to respond to the Complaint.

10     3.      ACI asked for, and Brekhus agreed, to further extend ACI's time to answer or

11  otherwise plead in response to the Complaint up to and including January 28, 2019.

12     4.      No party will be prejudiced by the stipulated extension.

13     5.      This Stipulation is without prejudice to, or waiver of, any rights or defenses

14  otherwise available to the Parties in this action.

15     NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED, between Brekhus,

16  by his undersigned counsel, and ACI, by its undersigned counsel, that ACI shall have up to and

17  including January 28, 2019 to answer or otherwise plead in response to the Complaint.

18

19

20  Dated: January 14, 2019                    SACKS, RICKETTS & CASE, LLP

21

22                                             By: /s/ Luanne Sacks
                                               Luanne Sacks
23                                             Michele Floyd
                                               Robert B. Bader
24                                             Jacqueline Young
                                               Attorneys for Defendant
25                                             ASUS COMPUTER INTERNATIONAL

26

27                                                       1

28  _____

1

Dated: January 14, 2019                    GUTRIDE SAFIER LLP

2
                                            By: /s/ Seth A. Safier

3                                           Adam J. Gutride
                                            Seth A. Safier
4                                           Todd Kennedy
                                            Attorneys for Plaintiff
5                                           EDWARD BREKHUS

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27
                                            2
28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## [PROPOSED] ORDER

Having considered the Parties' Stipulation, and good cause appearing, the Court GRANTS the Parties' Stipulation.  Defendant Asus Computer International shall have up to and including through _____, 2019 to answer or otherwise plead in response to the Complaint.

**IT IS SO ORDERED.**

Dated: _____          _____

San Francisco County Superior Court Judge

3

1   Luanne Sacks (SBN 120811)
    lsacks@srclaw.com
2   Michele Floyd (SBN 163031)
    mfloyd@srclaw.com
3   Robert B. Bader (SBN 233165)
    rbader@srclaw.com
4   Jacqueline Young (SBN 280374)
    jyoung@srclaw.com
5   SACKS, RICKETTS & CASE LLP
    177 Post Street, Suite 650
6   San Francisco, CA 94108
    Telephone: 415-549-0580
7   Facsimile: 415-549-0640

8   Attorneys for Defendant
    ASUS COMPUTER INTERNATIONAL
9

ELECTRONICALLY
**F I L E D**
Superior Court of California,
County of San Francisco
**01/17/2019**
Clerk of the Court
BY:ANNIE PASCUAL
Deputy Clerk

10              **SUPERIOR COURT FOR THE STATE OF CALIFORNIA**

11                      **COUNTY OF SAN FRANCISCO**

12   EDWARD BREKHUS, an individual, on behalf      CASE NO. CGC-18-571553
     of himself, the general public, and those
13   similarly situated,
                                                   **PROOF OF SERVICE**
14                  Plaintiff,

15   v.

16   ASUS COMPUTER INTERNATIONAL,

17                  Defendants.

18

19 ·

20

21

22

23

24

25

26

27

28

**PROOF OF SERVICE**

STATE OF CALIFORNIA, COUNTY OF SAN FRANCISCO

    I am employed in the County of San Francisco, State of California.  I am over 18 years of age and am not a party to the within action.  My business address is 177 Post Street, Suite 650, San Francisco, CA 94108.

    On January 14, 2019 I served the foregoing document described as:

**STIPULATION AND [PROPOSED] ORDER EXTENDING TIME FOR DEFENDANT ASUS COMPUTER INTERNATIONAL TO RESPOND TO PLAINTIFF EDWARD BREKHUS' COMPLAINT**

on the following interested parties to this cause as follows:

**Attorneys for Plaintiff Edward Brekhus**

Adam J. Gutride
Seth A. Safier
Todd Kennedy
GUTRIDE SAFIER LLP
100 Pine Street, Suite 1250
San Francisco, CA 94111
Tel: 415-789-6390
Fax: 415-449-6469
Email: adam@gutridesafier.com
        seth@gutridesafier.com
        todd@gutridesafier.com

METHOD OF SERVICE

    ☒   MAIL: I placed the above document(s) in a sealed envelope and deposited such envelope(s) in the mail at San Francisco. The envelope(s) was/were mailed with postage thereon fully prepaid. I am readily familiar with the firm's practice of collection and processing of mail, which would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid at San Francisco, California, in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation or meter date is more than one business day after date of deposit for mailing in affidavit.

    ☐ PERSONAL SERVICE: I caused such envelope(s) to be delivered by hand to the above addressee(s).

    ☐ OVERNIGHT COURIER: I sent such document(s) on January 14, 2019 with postage thereon fully prepaid at San Francisco, California.

    ☒ E-SERVICE:  I caused such document(s) to be electronically served through *One Legal*.

1

1    I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

2    Executed on January 14, 2019 at San Francisco, California.

3

4    _____

5    Jessica Talavera-Rauh

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

2

1  Luanne Sacks (SBN 120811)
   lsacks@srclaw.com
2  Michele Floyd (SBN 163031)
   mfloyd@srclaw.com
3  Robert B. Bader (SBN 233165)
   rbader@srclaw.com
4  Jacqueline Young (SBN 280374)
   jyoung@srclaw.com
5  SACKS, RICKETTS & CASE LLP
   177 Post Street, Suite 650
6  San Francisco, CA 94108
   Telephone: 415-549-0580
7  Facsimile: 415-549-0640

8  Attorneys for Defendant
   ASUS COMPUTER INTERNATIONAL

9

**F I L E D**

San Francisco County Superior Court

**JAN 2 2 2019**

CLERK OF THE COURT

BY: _____
Deputy Clerk

10            **SUPERIOR COURT FOR THE STATE OF CALIFORNIA**

11                      **COUNTY OF SAN FRANCISCO**

12  EDWARD BREKHUS, an individual, on behalf
    of himself, the general public, and those          CASE NO. CGC-18-571553
13  similarly situated,
                                                        **STIPULATION AND [PROPOSED]**
14            Plaintiff,                                 **ORDER EXTENDING TIME FOR**
                                                        **DEFENDANT ASUS COMPUTER**
15  v.                                                  **INTERNATIONAL TO RESPOND TO**
                                                        **PLAINTIFF EDWARD BREKHUS'**
16  ASUS COMPUTER INTERNATIONAL,                        **COMPLAINT** *to 1-28-19*

17            Defendants.

18

19

20

21

22

23

24

25

26

27

28

STIPULATION AND [PROPOSED] ORDER EXTENDING TIME FOR DEFENDANT ASUS COMPUTER
INTERNATIONAL TO RESPOND TO PLAINTIFF EDWARD BREKHUS' COMPLAINT
CASE NO. CGC-18-571553

**STIPULATION**

Plaintiff Edward Brekhus ("Brekhus") and Defendant Asus Computer International ("ACI") (collectively, the "Parties"), through their undersigned counsel, hereby stipulate and agree as follows:

1.      On November 26, 2018, Brekhus filed his Complaint in this action. The Complaint and Summons were served on ACI pursuant to California Code of Civil Procedure section 415.10 on November 28, 2018.

2.      Pursuant to California Rule of Court 3.110(d), the Parties agreed to a 15-day extension for ACI to respond to the Complaint.

3.      ACI asked for, and Brekhus agreed, to further extend ACI's time to answer or otherwise plead in response to the Complaint up to and including January 28, 2019.

4.      No party will be prejudiced by the stipulated extension.

5.      This Stipulation is without prejudice to, or waiver of, any rights or defenses otherwise available to the Parties in this action.

NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED, between Brekhus, by his undersigned counsel, and ACI, by its undersigned counsel, that ACI shall have up to and including January 28, 2019 to answer or otherwise plead in response to the Complaint.


Dated: January 14, 2019                    SACKS, RICKETTS & CASE, LLP

                                           By: /s/ Luanne Sacks
                                           Luanne Sacks
                                           Michele Floyd
                                           Robert B. Bader
                                           Jacqueline Young
                                           Attorneys for Defendant
                                           ASUS COMPUTER INTERNATIONAL

1

1

Dated: January 14, 2019                    GUTRIDE SAFIER LLP

2
                                           By: /s/ Seth A. Safier
3                                          Adam J. Gutride
                                           Seth A. Safier
4                                          Todd Kennedy
                                           Attorneys for Plaintiff
5                                          EDWARD BREKHUS

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27
                                           2
28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**[~~PROPOSED~~] ORDER**

Having considered the Parties' Stipulation, and good cause appearing, the Court GRANTS the Parties' Stipulation. Defendant Asus Computer International shall have up to and including through _*1-28*_, 2019 to answer or otherwise plead in response to the Complaint.

**IT IS SO ORDERED.**

Dated: _____JAN 2 2 2019_____    _____

San Francisco County Superior Court Judge

**GARRETT L. WONG**

3

Luanne Sacks (SBN 120811)
lsacks@srclaw.com
Michele Floyd (SBN 163031)
mfloyd@srclaw.com
Robert B. Bader (SBN 233165)
rbader@srclaw.com
Jacqueline Young (SBN 280374)
jyoung@srclaw.com
SACKS, RICKETTS & CASE LLP
177 Post Street, Suite 650
San Francisco, CA 94108
Telephone: 415-549-0580
Facsimile: 415-549-0640

Attorneys for Defendant
ASUS COMPUTER INTERNATIONAL

## SUPERIOR COURT FOR THE STATE OF CALIFORNIA

## COUNTY OF SAN FRANCISCO

| | |
|---|---|
| EDWARD BREKHUS, an individual, on behalf of himself, the general public, and those similarly situated, | CASE NO. CGC-18-571553 |
| Plaintiff, | **STIPULATION AND [PROPOSED] ORDER EXTENDING DEFENDANT'S TIME TO RESPOND TO COMPLAINT PENDING PRIVATE MEDIATION** |
| v. | |
| ASUS COMPUTER INTERNATIONAL, | |
| Defendants. | |

.

**STIPULATION**

Plaintiff Edward Brekhus ("Brekhus") and Defendant Asus Computer International ("ACI") (collectively, the "Parties"), through their undersigned counsel, hereby stipulate and agree as follows:

1.    On November 26, 2018, Brekhus filed his Complaint in this action.  The Complaint and Summons were served on ACI pursuant to California Code of Civil Procedure section 415.10 on November 28, 2018.

2.    Subsequently, the Parties requested, and the Court ordered, a further extension of ACI's time to answer or otherwise plead in response to the Complaint up to and including January 28, 2019.

3.    The Parties are engaged in good faith efforts to resolve this action and have agreed to private mediation before the Hon. James L. Warren (Ret.).  The mediation is scheduled to take place at the JAMS San Francisco offices on March 26, 2019.

4.    As a result, the Parties have agreed to further continue Defendant's time to respond to the Complaint until a mutually agreed upon date following the mediation, if necessary.

5.    The initial case management conference in the above-captioned action is currently scheduled for May 1, 2019 in the above-captioned Court.  The Parties further agree that the initial case management conference date should remain in place, and that the Parties will advise the Court at that time as to status and whether a new deadline to respond to the Complaint is required.

6.    No party will be prejudiced by the stipulated extension.

7.    This Stipulation is without prejudice to, or waiver of, any rights or defenses otherwise available to the Parties in this action.

NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED, between Brekhus, by his undersigned counsel, and ACI, by its undersigned counsel, that ACI's time to respond is continued until after the Parties' private mediation and that the initial case management conference currently scheduled for May 1, 2019 should remain on calendar.

1

2  Dated: January 24, 2019                    SACKS, RICKETTS & CASE, LLP

3                                             By: /s/ Jacqueline Young

4                                             Luanne Sacks

5                                             Michele Floyd
                                              Robert B. Bader
6                                             Jacqueline Young

7                                             Attorneys for Defendant
                                              ASUS COMPUTER INTERNATIONAL
8

9  Dated: January 24, 2019                    GUTRIDE SAFIER LLP

10                                            By: /s/ Seth Safier

11                                            Adam J. Gutride

12                                            Seth A. Safier
                                              Todd Kennedy
13                                            Attorneys for Plaintiff

14                                            EDWARD BREKHUS

15

16

17

18

19

20

21

22

23

24

25

26

27

28

2

**[PROPOSED] ORDER**

Having considered the Parties' Stipulation, and good cause appearing, the Court GRANTS the Parties' Stipulation.  Defendant ASUS Computer International's deadline to respond to the Complaint is continued pending the Parties' private mediation.  The initial case management conference currently scheduled for May 1, 2019 shall remain on calendar, and the Parties shall report on that date as to case status and whether a new deadline to respond to the Complaint is required.

**IT IS SO ORDERED.**

Dated: _____            _____
                                                San Francisco County Superior Court Judge

STIPULATION AND [PROPOSED] ORDER EXTENDING DEFENDANT'S TIME TO RESPOND TO
COMPLAINT PENDING PRIVATE MEDIATION
CASE NO. CGC-18-571553

Luanne Sacks (SBN 120811)
lsacks@srclaw.com
Michele Floyd (SBN 163031)
mfloyd@srclaw.com
Robert B. Bader (SBN 233165)
rbader@srclaw.com
Jacqueline Young (SBN 280374)
jyoung@srclaw.com
SACKS, RICKETTS & CASE LLP
177 Post Street, Suite 650
San Francisco, CA 94108
Telephone: 415-549-0580
Facsimile: 415-549-0640

Attorneys for Defendant
ASUS COMPUTER INTERNATIONAL

ELECTRONICALLY
**F I L E D**
*Superior  Court of California,
County of San Francisco*
**01/24/2019**
**Clerk of the Court**
BY:**BOWMAN LIU**
**Deputy Clerk**

**SUPERIOR COURT FOR THE STATE OF CALIFORNIA**

**COUNTY OF SAN FRANCISCO**

| | |
|---|---|
| EDWARD BREKHUS, an individual, on behalf of himself, the general public, and those similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>ASUS COMPUTER INTERNATIONAL,<br><br>Defendants. | CASE NO. CGC-18-571553<br><br>**PROOF OF SERVICE** |

.

1

## PROOF OF SERVICE

2

STATE OF CALIFORNIA, COUNTY OF SAN FRANCISCO

3

4

    I am employed in the County of San Francisco, State of California.  I am over 18 years of age and am not a party to the within action.  My business address is 177 Post Street, Suite 650, San Francisco, CA 94108.

5

    On January 24, 2019 I served the foregoing document described as:

6

7

**STIPULATION AND [PROPOSED] ORDER EXTENDING DEFENDANT'S TIME TO RESPOND TO COMPLAINT PENDING PRIVATE MEDIATION**

8

on the following interested parties to this cause as follows:

9

    **Attorneys for Plaintiff Edward Brekhus**

10

11

    Adam J. Gutride
    Seth A. Safier
    Todd Kennedy

12

    GUTRIDE SAFIER LLP
    100 Pine Street, Suite 1250

13

    San Francisco, CA 94111

14

    Tel: 415-789-6390
    Fax: 415-449-6469

15

    Email: adam@gutridesafier.com

16

           seth@gutridesafier.com
           todd@gutridesafier.com

17

18

METHOD OF SERVICE

19

20

    ☒   MAIL: I placed the above document(s) in a sealed envelope and deposited such envelope(s) in the mail at San Francisco. The envelope(s) was/were mailed with postage thereon fully prepaid. I am readily familiar with the firm's practice of collection and processing of mail, which would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid at San Francisco, California, in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation or meter date is more than one business day after date of deposit for mailing in affidavit.

21

22

23

24

    ☐ PERSONAL SERVICE: I caused such envelope(s) to be delivered by hand to the above addressee(s).

25

26

    ☐ OVERNIGHT COURIER: I sent such document(s) on January 24, 2019 with postage thereon fully prepaid at San Francisco, California.

27

    ☐ E-SERVICE:  I caused such document(s) to be electronically served through *File & Serve Xpress.*

28

1    I declare under penalty of perjury under the laws of the State of California that the foregoing
is true and correct.

2    Executed on January 24, 2019 at San Francisco, California.

3

4    _____

5                                        Jessica Talavera-Rauh

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

2



### SUPERIOR COURT OF CALIFORNIA
### COUNTY OF SAN FRANCISCO

# Document Scanning Lead Sheet

Jan-30-2019  9:39 am

Case Number: CGC-18-571553

Filing Date: Jan-30-2019 9:38

Filed by:  GINA GONZALES

Image: 06666199

ORDER

EDWARD BREKHUS VS. ASUS COMPUTER INTERNATIONAL

001C06666199

**Instructions:**
Please place this sheet on top of the document to be scanned.

1  Luanne Sacks (SBN 120811)
   lsacks@srclaw.com
2  Michele Floyd (SBN 163031)
   mfloyd@srclaw.com
3  Robert B. Bader (SBN 233165)
   rbader@srclaw.com
4  Jacqueline Young (SBN 280374)
   jyoung@srclaw.com
5  SACKS, RICKETTS & CASE LLP
   177 Post Street, Suite 650
6  San Francisco, CA 94108
   Telephone: 415-549-0580
7  Facsimile: 415-549-0640

8  Attorneys for Defendant
   ASUS COMPUTER INTERNATIONAL
9

**F I L E D**
San Francisco County Superior Court

**JAN 3 0 2019**

CLERK OF THE COURT
BY: _Yuna Gonzales_
                    Deputy Clerk

10        **SUPERIOR COURT FOR THE STATE OF CALIFORNIA**

11              **COUNTY OF SAN FRANCISCO**

12  EDWARD BREKHUS, an individual, on behalf
    of himself, the general public, and those
13  similarly situated,

14              Plaintiff,

15  v.

16  ASUS COMPUTER INTERNATIONAL,

17              Defendants.

18

CASE NO. CGC-18-571553

**STIPULATION AND [PROPOSED]
ORDER EXTENDING DEFENDANT'S
TIME TO RESPOND TO COMPLAINT
PENDING PRIVATE MEDIATION** *to*
*4-26-19*

19
20
21
22
23
24
25
26
27
28

STIPULATION AND [PROPOSED] ORDER EXTENDING DEFENDANT'S TIME TO RESPOND TO
COMPLAINT PENDING PRIVATE MEDIATION
CASE NO. CGC-18-571553

## STIPULATION

Plaintiff Edward Brekhus ("Brekhus") and Defendant Asus Computer International ("ACI") (collectively, the "Parties"), through their undersigned counsel, hereby stipulate and agree as follows:

1.      On November 26, 2018, Brekhus filed his Complaint in this action.  The Complaint and Summons were served on ACI pursuant to California Code of Civil Procedure section 415.10 on November 28, 2018.

2.      Subsequently, the Parties requested, and the Court ordered, a further extension of ACI's time to answer or otherwise plead in response to the Complaint up to and including January 28, 2019.

3.      The Parties are engaged in good faith efforts to resolve this action and have agreed to private mediation before the Hon. James L. Warren (Ret.).  The mediation is scheduled to take place at the JAMS San Francisco offices on March 26, 2019.

4.      As a result, the Parties have agreed to further continue Defendant's time to respond to the Complaint until a mutually agreed upon date following the mediation, if necessary.

5.      The initial case management conference in the above-captioned action is currently scheduled for May 1, 2019 in the above-captioned Court.  The Parties further agree that the initial case management conference date should remain in place, and that the Parties will advise the Court at that time as to status and whether a new deadline to respond to the Complaint is required.

6.      No party will be prejudiced by the stipulated extension.

7.      This Stipulation is without prejudice to, or waiver of, any rights or defenses otherwise available to the Parties in this action.

NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED, between Brekhus, by his undersigned counsel, and ACI, by its undersigned counsel, that ACI's time to respond is continued until after the Parties' private mediation and that the initial case management conference currently scheduled for May 1, 2019 should remain on calendar.

1

1

2  Dated: January 24, 2019                SACKS, RICKETTS & CASE, LLP

3                                         By: /s/ Jacqueline Young

4                                         Luanne Sacks
                                          Michele Floyd
5                                         Robert B. Bader
6                                         Jacqueline Young
                                          Attorneys for Defendant
7                                         ASUS COMPUTER INTERNATIONAL

8
   Dated: January 24, 2019                GUTRIDE SAFIER LLP
9

10                                        By: /s/ Seth Safier

11                                        Adam J. Gutride
                                          Seth A. Safier
12                                        Todd Kennedy
13                                        Attorneys for Plaintiff
                                          EDWARD BREKHUS
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
                                      2

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**[~~PROPOSED~~] ORDER**

Having considered the Parties' Stipulation, and good cause appearing, the Court GRANTS

the Parties' Stipulation.  Defendant ASUS Computer International's deadline to respond to the

Complaint is continued ~~pending the Parties' private mediation.~~ *to 4-26-19.* ~~The initial case management~~

~~conference currently scheduled for May 1, 2019 shall remain on calendar, and the Parties shall~~

~~report on that date as to case status and whether a new deadline to respond to the Complaint is~~

~~required.~~

   **IT IS SO ORDERED.**

Dated: ___JAN 3 0 2019___

_____
San Francisco County Superior Court Judge
GARRETT L. WONG

3

STIPULATION AND [~~PROPOSED~~] ORDER EXTENDING DEFENDANT'S TIME TO RESPOND TO
COMPLAINT PENDING PRIVATE MEDIATION
CASE NO. CGC-18-571553

# SUPERIOR COURT OF CALIFORNIA
## COUNTY OF SAN FRANCISCO
400 MCALLISTER STREET, SAN FRANCISCO, CA 94102-4514

EDWARD BREKHUS

PLAINTIFF (S)

VS.

ASUS COMPUTER INTERNATIONAL

DEFENDANT (S)

**Case Management Department 610**
**Case Management Order**

**NO. CGC-18-571553**

**Order Continuing Case**
**Management Conference**

TO: ALL COUNSEL AND SELF-REPRESENTED LITIGANTS

The May-01-2019 CASE MANAGEMENT CONFERENCE is canceled, and it is hereby ordered:

This case is set for a case management conference on Jun-05-2019 in Department 610 at 10:30 am.

CRC 3.725 requires the filing and service of a case management statement form CM-110 no later than fifteen (15) days before the case management conference. However, it would facilitate the issuance of a case management order without an appearance at the case management conference if the case management statement is filed, served and lodged in Department 610 twenty-five (25) days before the case management conference.

PLAINTIFF(S) must serve a copy of this notice on all parties not listed on the attached proof of service within five (5) days of the date of this order.

DATED:  APR-12-2019                    GARRETT L. WONG
                                                        JUDGE OF THE SUPERIOR COURT

CERTIFICATE OF SERVICE BY MAIL

I, the undersigned, certify that I am an employee of the Superior Court of California, County of San Francisco and not a party to the above-entitled cause and that on APR-12-2019 I served the attached Order Continuing Case Management Conference by placing a copy thereof in an envelope addressed to all parties to this action as listed below.  I then placed the envelope in the outgoing mail at 400 McAllister Street, San Francisco, CA 94102, on the date indicated above for collection, sealing of the envelope, attachment of required prepaid postage, and mailing on that date, following standard court practice.


Dated :  APR-12-2019                         By: DARLENE LUM



LUANNE SACKS (120811)
SACKS, RICKETTS & CASE LLP
177 POST STREET, SUITE 650
SAN FRANCISCO, CA  94108


ADAM GUTRIDE (181446)
GUTRIDE SAFIER LLP
100 PINE STREET, SUITE 1250
SAN FRANCISCO, CA  94111

# EXHIBIT D

1   Luanne Sacks (SBN 120811)
    lsacks@srclaw.com
2   Michele Floyd (SBN 163031)
    mfloyd@srclaw.com
3   Robert B. Bader (SBN 233165)
    rbader@srclaw.com
4   Jacqueline Young (SBN 280374)
    jyoung@srclaw.com
5   SACKS, RICKETTS & CASE LLP
    177 Post Street, Suite 650
6   San Francisco, CA 94108
    Telephone: 415-549-0580
7   Facsimile: 415-549-0640

8   Attorneys for Defendants
    ASUS COMPUTER INTERNATIONAL and
9   ASUSTEK COMPUTER, INC.

10             **SUPERIOR COURT OF CALIFORNIA**

11             **COUNTY OF SAN FRANCISCO**

12

13   EDWARD BREKHUS, an individual, on    CASE NO.  CGC-18-571553
    behalf of himself, the general public, and those
14   similarly situated,    **DEFENDANTS ASUS COMPUTER**
                           **INTERNATIONAL AND ASUSTEK**
15           Plaintiff,    **COMPUTER, INC.'S NOTICE OF FILING**
                           **OF NOTICE OF REMOVAL OF CIVIL**
16   v.    **ACTION TO UNITED STATES DISTRICT**
                           **COURT, NORTHERN DISTRICT OF**
17   ASUS COMPUTER INTERNATIONAL;    **CALIFORNIA**
    ASUSTEK COMPUTER, INC.,
18
            Defendants.
19

20           __NOTICE OF FILING OF NOTICE OF REMOVAL__

21       TO THE CLERK OF THE ABOVE-ENTITLED COURT, THE PARTIES, AND ALL

22   ATTORNEYS OF RECORD:

23       PLEASE TAKE NOTICE that on April 29, 2019, Defendants ASUS Computer

24   International and ASUSTeK Computer, Inc., filed in the United States District Court for the

25   Northern District of California, a Notice of Removal of the above-captioned action from this

26   Court.

27       A copy of the Notice of Removal is attached to this Notice as **Exhibit 1**, and is served

28   and filed herewith.

1      PLEASE TAKE FURTHER NOTICE that pursuant to 28 U.S.C. section 1446(d), the

2   matter may proceed no further in the above-captioned Court unless and until the case is

3   remanded.

4   Dated: April 29, 2019                          Respectfully submitted,

5

6                                                  By _____

7                                                       LUANNE SACKS
                                                        MICHELE FLOYD
8                                                       ROBERT B. BADER
                                                        JACQUELINE YOUNG
9                                                       SACKS, RICKETTS & CASE LLP

10                                                      Attorneys for Defendants
                                                        ASUS COMPUTER INTERNATIONAL
11                                                      and ASUTEK COMPUTER, INC.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28